WALTER J. GIBBONS, Admr., Defendant in Error, *vs.* THE AURORA, ELGIN AND CHICAGO RAILROAD COMPANY, Plaintiff in Error.

*Opinion filed April 23, 1914.*

1. NEGLIGENCE—*plaintiff must allege and prove that deceased was in the exercise of due care.* In an action by an administrator to recover damages for the accidental killing of his intestate it is incumbent upon the plaintiff to allege and prove that the deceased was in the exercise of due care and caution under all the circumstances, and unless this is proven there can be no recovery.

2. SAME—*when question whether deceased was using due care is for the jury.* Whether a teamster was using due care for his safety at the time he drove upon the track in front of a rapidly approaching electric car is a question for the jury, even though he could have seen the car had he looked, where it appears that he had stopped his team some distance from the tracks while a freight train on a steam railroad beyond the electric line passed by and that he was giving his attention to his team during the passage of the freight train, the noise of which drowned the signals of the electric car, which the teamster did not see or hear until after he had started his team and was upon the track.

3. SAME—*effect where speed limit ordinance is repealed after accident.* If at the time of the accident the defendant's electric car was running in excess of the speed limit imposed by an ordinance then in force, the liability of the defendant for violating the ordinance is not affected by the fact that the ordinance is subsequently repealed.

4. SAME—*when a speed ordinance is not unreasonable as applied to electric cars.* The statute gives municipal corporations the right to pass ordinances regulating the speed of all railroad trains

within the corporate limits, and an ordinance which fixes the rate of speed within the limits prescribed by the statute is not unreasonable as applied to electric cars on an interurban railroad.

5. SAME—*when instruction as to presumption arising from violation of speed ordinance is not erroneous.* An instruction stating that if the jury believe, from the evidence, that the deceased was killed within the corporate limits of the village by the defendant company's car while he was in the exercise of ordinary care for his own safety, and that the defendant company was at the time running its car at a greater rate of speed than the ten miles per hour fixed by ordinance, then the law presumes the death to have been caused by the negligence of the defendant, is not erroneous in failing to state that the presumption is not conclusive and that the violation of the ordinance must be the proximate cause of the injury.

CARTWRIGHT and DUNN, JJ., dissenting.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. PAUL McWILLIAMS, Judge, presiding.

A. J. HOPKINS, D. J. PEFFERS, J. S. HOPKINS, and R. J. WING, for plaintiff in error.

RICHARD J. COONEY, and FRANCIS J. WOOLLEY, for defendant in error.

Mr. CHIEF JUSTICE COOKE delivered the opinion of the court:

The defendant in error, as administrator of the estate of Frederick Newman, deceased, brought this action in the superior court of Cook county against plaintiff in error, the Aurora, Elgin and Chicago Railroad Company, to recover damages resulting from the death of Frederick Newman, alleged to have been occasioned through the negligence of plaintiff in error. A judgment was rendered in the superior court for $3000, which was affirmed, upon appeal, by the Appellate Court for the First District. The cause has been brought to this court for further review by *certiorari.*

The plaintiff in error conducts a double-track interurban electric railway. Defendant in error's intestate was struck and killed by one of the electric cars of plaintiff in error on a street crossing within the limits of the village of Bellwood. The principal contention of plaintiff in error is that the trial court erred in refusing to direct a verdict on the ground that the evidence did not disclose that the deceased was in the exercise of due care and caution for his own safety at the time of the accident, and that the evidence shows that deceased was guilty of contributory negligence.

Frederick Newman had been engaged for a number of years in the occupation of hack-driver in the city of Chicago, and it was shown that his eyesight was good and his hearing acute. On the day of the accident he was driving a carriage on his return from a funeral at Oakridge cemetery, located some distance west of the city of Chicago. The vehicle he was driving was a closed carriage with an open, elevated driver's seat in front. At the time of the accident he was driving along a highway known as Madison street. At the place of the accident the right of way of plaintiff in error extended east and west and a double-track railroad was located thereon. The distance between the south rail of the north or west-bound track and the south rail of the south or east-bound track is eight feet. Parallel with and joining on the north the right of way of plaintiff in error is the right of way of the Chicago Great Western Railway Company, upon which are located its railroad tracks. The south rail of the main track of the Chicago Great Western railway is 77 feet and 8 inches north of the north rail of the tracks of plaintiff in error. Madison street at the place of the accident crosses the rights of way of these two railroads at right angles. Immediately south of plaintiff in error's right of way Madison street turns to the west, where it parallels the rights of way of the two railroads for a considerable distance. The distance from the south rail of plaintiff in error's tracks to the cen-

ter of Madison street where it turns to the west is 83½ feet. The village limits of the village of Bellwood are about 600 feet east of the crossing of Madison street over these two railroads, and this is also the west limits of the village of Maywood. The fatality occurred on the afternoon of April 8, 1908. The day was cold and rainy. As the deceased drove east along Madison street towards the crossing in question a freight train was approaching from the west on the main track of the Chicago Great Western railroad. A little distance behind deceased was Peter Jensen, another hack-driver, who with his team and carriage was also returning to Chicago from the same funeral. As the deceased approached the turn in the road to go north over the crossing the engineer of the freight train signaled to him by waving his hand. The deceased, who was then a little in advance of the engine of the freight train, answered this signal. He turned the corner to the north, facing the railroad tracks, and stopped his team, according to the testimony of the engineer of the freight train, about 30 feet south of the *tracks* of plaintiff in error, and according to the testimony of Jensen about 25 feet south of plaintiff in error's *track*. Jensen drove up to about the turn in the road and stopped, facing east. Deceased remained in this position while the freight train passed over the crossing. Just as the last car was passing over the highway the deceased started his team and attempted to pass over the railroad tracks of plaintiff in error. The engineer of the Great Western train testified that he watched deceased as his train proceeded, and that the deceased apparently was looking at him until he had reached a point 100 feet beyond the crossing; that while his train was passing over the crossing deceased looked in different directions, watching the freight train pass the crossing. In the meantime an electric car of plaintiff in error was rapidly approaching from the east. The tracks of plaintiff in error were straight and without a curve for a distance of about 3500 feet east of this cross-

ing. There was nothing to obstruct the view east of anyone situated at the point where deceased stopped his team. There were no buildings or trees, the telegraph poles were on the north side of the track, and the ground was perfectly level. A car approaching from the east on the tracks of plaintiff in error was visible for a distance of about a mile. Had the deceased looked to the east he could have seen the car approaching on the west-bound track of plaintiff in error. There is no evidence that he did look. Jensen testified that he saw the car approaching, but that he did not observe deceased looking to the east or looking at anything while the freight train was passing except his horses. The engineer of the freight train (the only other witness who testified on this subject) did not see the deceased look at anything except his train. As soon as the freight train had passed over the crossing deceased started his team and drove it at a walk upon the tracks of plaintiff in error.

It is apparent from the testimony of the three witnesses who testified to the circumstances attending the accident that deceased did not realize his danger or the presence of the electric car until his horses were passing over the west-bound track of plaintiff in error. At that time he stood up and urged his horses into a gallop just as the impact came. The only witnesses who testified to these circumstances were Jensen, the engineer and a passenger on the electric car, all of whom were called by defendant in error. Plaintiff in error offered no proof whatever except a plat and some photographs showing the physical surroundings. The engineer testified that he watched the deceased from the time his engine passed over the crossing until he was struck by the electric car. The deceased was in plain view of Jensen all the time, and he was able to testify to everything that occurred after deceased had turned the corner and stopped, facing north. The passenger on the electric car had his attention attracted to the fact that something unusual was occurring and looked out of the car as the

deceased was driving up to the tracks of plaintiff in error. These witnesses disagree as to the distance of the electric car from this crossing at the time deceased started up his team from where he had stopped, but the testimony is undisputed that the electric car was traveling at a rate of from forty-five to fifty miles per hour at that time. Jensen testified that when deceased started his team the car was 300 feet away. The engineer places the distance at about 600 feet, while the passenger on the electric car estimated that the car at that time was 800 or 900 feet from the crossing. The engineer testified that just as the electric car passed his engine the motorman whistled for the crossing by giving a signal consisting of two long and two short blasts. The passenger also testified that he heard the crossing signal. Jensen says that he did not hear any whistle blown until almost the instant of the impact.

It was incumbent upon defendant in error to allege and prove that deceased was in the exercise of due care and caution under all the circumstances, and unless this is proven there can be no recovery. (*Jorgenson* v. *Johnson Chair Co.* 169 Ill. 429; *Newell* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 261 id. 505.) We have frequently had occasion to discuss the care required on the part of one approaching a railroad crossing. In *Winn* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 239 Ill. 132, the holdings on this question were thus summarized: "This court has repeatedly held that a traveler approaching a railroad crossing is required to use such care as a person of ordinary prudence would exercise under the same circumstances, and this ordinarily demands the use of the faculties of sight and hearing to discover whether a train is approaching or not. But it cannot be said, as a matter of law, that the failure to look or listen under all circumstances will bar a recovery. It is usually a question of fact for the jury to determine, in view of all the surrounding circumstances, whether failure to look and listen

constitutes negligence or lack of due care.—*Chicago and Alton Railroad Co. v. Pearson,* 184 Ill. 386; *Pennsylvania Co. v. Frana,* 112 id. 398; *Terre Haute and Indianapolis Railroad Co. v. Voelker,* 129 id. 540; *Chicago and Northwestern Railway Co. v. Hansen,* 166 id. 623; *Chicago and Alton Railroad Co. v. Adler,* 129 id. 335; *Chicago and Alton Railroad Co. v. Lewandowski,* 190 id. 301; *Chicago Junction Railway Co. v. McGrath,* 203 id. 511; *Elgin, Joliet and Eastern Railway Co. v. Lawlor,* 229 id. 621."

In order to hold that, as a matter of law, the deceased was guilty of contributory negligence it must appear that there was no evidence fairly tending to prove that he was in the exercise of such care and caution for his own safety as a person of ordinary prudence would exercise under the same circumstances. Had deceased been approaching this crossing with nothing to distract his attention, at a time when no train was passing on the track of the steam road, and had driven in front of plaintiff in error's car without giving any attention whatever to his surroundings, a different question would be presented. At the time he approached this crossing the freight train traveling the same direction was also approaching. Deceased was signaled to stop by the engineer of this train, which he did at a safe distance. It was but natural that the deceased, after stopping, gave practically the whole of his attention to his team of horses, as Jensen testified he did, as they were facing a passing train at a distance of about 110 feet. The freight train necessarily made considerable noise, which was no doubt sufficient, in view of the testimony, to drown the crossing signal of the electric car and make it impossible for anyone on the highway at the crossing to hear the same. That he did not hear the crossing signal is evident from the testimony of Jensen, who did not hear it although he was alive to the situation, saw the car approaching when it was a mile away, and realized as soon as deceased started his team that an accident was unavoidable if he proceeded to cross

the track. Under these circumstances it became a question of fact for the jury to determine whether the deceased was in the exercise of due care and caution for his own safety, or whether he was guilty of negligence in failing to look, instead of depending on his sense of hearing, to detect the approach of plaintiff in error's car. The peremptory instruction was properly refused.

It is contended that an ordinance of the village of Bellwood limiting the speed of all trains to ten miles an hour within the village was erroneously admitted in evidence. The first basis for this contention is, that since the accident and before the trial this ordinance had been repealed, and that defendant in error had therefore lost all rights which he could claim by virtue of it. The right of action was not given by this ordinance and it could not be taken away by its repeal. If at the time of the accident plaintiff in error was guilty of actionable negligence by reason of the violation of a valid ordinance, the subsequent repeal of the ordinance would not deprive anyone injured by reason of this negligence of his right of action.

It is next contended that this ordinance was unreasonable and void as applied to plaintiff in error. The statute gives municipal corporations the right to pass ordinances regulating the speed of all railroad trains within the corporate limits, and the rate of speed fixed by this ordinance was within the limits prescribed by the statute.

Other objections are urged to the validity of this ordinance, but we do not consider them of sufficient importance to require discussion.

Complaint is made of the action of the court in refusing two instructions asked on the part of plaintiff in error and in giving one on behalf of defendant in error. The substance of the first refused instruction complained of is covered by other instructions given. The other refused instruction was based upon the theory that the deceased was intoxicated at the time he was killed. This instruction is

entirely unsupported by the evidence and was properly refused. The only evidence upon which it could be claimed this instruction could be based was, that the deceased ate his lunch after the funeral on the day in question at a place where a bar was conducted in connection with the lunch room, and that he was a man who occasionally drank liquor. It was not shown that he drank any liquor on this occasion, but the evidence tends to prove that he did not do so. The given instruction complained of is as follows:

"The court instructs the jury that if they believe, from a preponderance of the evidence, that the deceased, Frederick Newman, was killed within the corporate limits of the village of Bellwood by a car of the defendant company while he was in the exercise of ordinary care for his own safety, and that the defendant company was at the time running its said car at a greater rate of speed than ten miles an hour, then the law presumes the death of the said Frederick Newman to have been caused by the negligence of the defendant or its agents."

The objection urged to this instruction is, that it does not tell the jury that the presumption which the law raises from the facts recited is not conclusive and that it may be rebutted, and that it does not state that the jury must believe that the violation of the ordinance was the proximate cause of the injury. This instruction is in the exact language of the one approved in *Dukeman* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 237 Ill. 104, and it was not error to give it so far as the first objection made is concerned. As to the second objection, if plaintiff in error desired to have the jury instructed on that question it should have asked an instruction in its own behalf.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

CARTWRIGHT and DUNN, JJ., dissenting.