Charlotte Sheehan, Administratrix, Defendant in Error, v. Wabash Railway Company, Plaintiff in Error.

1. COMMERCE, § 4*—*when pipe fitter works under Federal Employers' Liability Act.* A pipe fitter, employed by an interstate common carrier in repairing an engine while it was on a sidetrack preparatory to its being used to pull a passenger car between States, was engaged in interstate commerce and was working under the Federal Employers' Liability Act.

2. COMMERCE, § 4*—*when employee is engaged in interstate commerce.* To be engaged in interstate commerce, an employee need not be directly working in the transportation of goods from one State to another or in the operation and movement of trains; if he is engaged in the operation, maintenance or repair of any of the instrumentalities used by the carrier in the transportation of goods from one State into another, he is engaged in interstate commerce.

Error to the Circuit Court of Macon county; the Hon. WILLIAM K. WHITFIELD, Judge, presiding. Heard in this court at the October term, 1918. Affirmed. Opinion filed July 9, 1919. *Certiorari* denied by Supreme Court (making opinion final).

HUGH W. HOUSUM and FRED HAMILTON, for plaintiff in error; J. L. MINNIS and N. S. BROWN, of counsel.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Le Forgee, Black & Samuels and Baldwin, Carey & Wierman, for defendant in error.

Mr. Justice Waggoner delivered the opinion of the court.

Defendant in error brought an action on the case against the Wabash Railway Company to recover damages for the death of her husband, Richard C. Sheehan. The declaration alleged that the Wabash Railway Company was an interstate common carrier; that Richard C. Sheehan was employed by said railway company as a pipe fitter at its locomotive shops in Decatur, Illinois; that on July 9, 1917, the railway company caused its engine number 622 to be placed upon a sidetrack in its yards, in Decatur, for the purpose of being repaired so that it could be attached to a train of passenger cars and proceed to the City of St. Louis, Missouri; that after being so repaired, on said day, it was attached to a train of passenger cars and did proceed from Decatur, Illinois, to St. Louis, Missouri; that the railway company, not regarding its duty, negligently backed a certain other engine into engine number 622 while it was on a sidetrack being repaired and while Richard C. Sheehan was on the ground under the engine repairing it, whereby Richard C. Sheehan, while in the exercise of due care and caution for his own safety and in the discharge of his duty, was so crushed and injured that he then and there died.

A general and special demurrer to the declaration was interposed and overruled. The plaintiff in error filed a plea of the general issue, together with special pleas setting up contributory negligence, assumption of risk, and that Richard C. Sheehan was not engaged in interstate commerce.

Issues were joined and the case tried by a jury, which returned a verdict of $10,000 in favor of de-

fendant in error. Motions for new trial and in arrest of judgment were made and each denied. The court rendered judgment on the verdict.

Richard C. Sheehan was employed by the Wabash Railway Company in its locomotive works in Decatur as a pipe fitter. He was 50 years of age at the time of his death, was married and living with his wife. His wages ran from $80 to $100 a month. On July 9, 1917, he went to work at 7 o'clock in the morning. About 10 o'clock in the forenoon of that day he worked with Charles Sandon under the tender of engine number 622 repairing a pipe. The turntable in the roundhouse of said railway company was being repaired at that time, and engines were placed on sidetracks, near the roundhouse, for repairs. On this account Richard C. Sheehan had no pit to work in while under the engine, but sat upon the track. There was another engine standing 25 or 30 feet east from the engine under which Richard C. Sheehan was working, on the same sidetrack. John H. Harry, an assistant train master of the Wabash Railway Company, came into the yards, climbed into the other engine, and attempted to move it back 5 or 6 feet. The air pressure was so low that, after starting it, the brakes did not hold when an attempt was made to stop it. There was a slight down grade. The engine moved slowly backwards into the rear end of engine number 622. John H. Harry could not get the reverse lever unlatched without considerable difficulty, and before he did get it unlatched and reversed the engine he was on bumped into engine number 622, moved it several feet, caught Richard C. Sheehan under the sand board and doubled him up, killing him immediately.

Engine number 622 had come into Decatur on the night of July 8, 1917, from Peru, Indiana, and was placed on a sidetrack near the roundhouse for the repair work that was being done on it on the morning

of July 9th. It left Decatur at 2:45 p. m. July 9th, on a run to St. Louis, Missouri. During the first 15 days of July this engine made ten interstate trips to St. Louis, Missouri, and return; two interstate trips to Peru, Indiana, and return, and three interstate trips to Chicago, Illinois, and return. The trips to Chicago were on July 3rd, 7th and 14th.

It is claimed by the railway company that the engine was not actually assigned for the run to St. Louis, that it made in the afternoon of July 9th, until some time after 12 o'clock noon of that day. The accident occurred soon after 10 o'clock in the forenoon, and the railway company contends that at the time Richard C. Sheehan was killed the engine was not engaged in interstate commerce. The defendant in error offered, on the trial in the Circuit Court, in addition to the evidence showing the use that was made of the engine during the first 15 days in July, the evidence of A. D. Mercer, roundhouse foreman of the Wabash Railway Company, who testified that he came to work about 6:50 a. m. on July 9th, and at that time engine number 622 was marked up for train number 15 south, being the run to St. Louis; that this marking was on a board on the "can house" in the railway yards; that this board had nothing to do with the assignment of engines, but was used for the information of the men in making repairs. Plaintiff in error admits that there was evidence tending to prove that the engine had been assigned to the St. Louis run, as it states in its brief that "in the case at bar to speak most favorably for the plaintiff (defendant in error) Sheehan was getting 622 ready for an interstate run."

The controlling question in this case is whether Richard C. Sheehan was employed by the railway company in interstate commerce at the time of the accident. Plaintiff in error contends for a narrow construction of the Federal Employers' Liability Act. According

to its contention, to be engaged in interstate commerce, the employe must be engaged in the transportation of interstate freight or passengers. It is said in *Dickinson v. Industrial Board of Illinois,* 280 Ill. 342 (344): "Not every employee of an interstate carrier is engaged in interstate commerce. If his work constitutes a real and substantial part of the interstate commerce in which the carrier is engaged, then the employee is engaged in interstate commerce, otherwise not. (*Illinois Cent. R. Co. v. Behrens,* 233 U. S. 473 [10 N. C. C. A. 153]; *Pedersen v. Delaware, L. & W. R. Co.,* 229 U. S. 146 [3 N. C. C. A. 779]; *Chicago, R. I. & P. R. Co. v. Industrial Board of Illinois,* 273 Ill. 528.) His employment need not be directly in the transportation of goods from one State to another or in the operation or movement of trains. If he is engaged in the operation, maintenance or repair of any of the instrumentalities used by the carrier in the transportation of goods from one State into another, he is engaged in interstate commerce. Section men repairing a track, carpenters repairing a bridge, machinists and car repairers working on engines and cars, and hostlers caring for engines, are engaged in interstate commerce if the track, bridge, engines and cars are used in interstate commerce. Their work has a direct and substantial connection with interstate transportation and is an essential part of it."

There was evidence in this case to support the finding of the jury that Richard C. Sheehan was engaged in repairing an engine preparatory to its being used to pull a train of passenger cars from Decatur, Illinois, to St. Louis, Missouri. The only reasonable construction to be placed on the evidence is that the employees of the railway company were ordered, not later than 7 o'clock in the morning, to have engine number 622 ready for a run to St. Louis in the afternoon of that day. No other meaning can be given to the order posted on the board at the "can house" in the rail-

way yards. It necessarily follows that Richard C. Sheehan was repairing an instrument used by the railway company in interstate commerce. He was working under the Federal Employers' Liability Act. *Pedersen v. Delaware, L. & W. R. Co.,* 229 U. S. 146 [3 N. C. C. A. 779]; *New York Cent. & H. River R. Co. v. Carr,* 238 U. S. 260 [9 N. C. C. A. 1]; *North Carolina R. Co. v. Zachary,* 232 U. S. 248 [9 N. C. C. A. 109]; *Northern Pac. R. Co. v. Maerkl,* 198 Fed. 1; *Baltimore & O. R. Co. v. Darr,* 204 Fed. 751; *Chicago, K. & S. Ry. Co. v. Kindlesparker,* 234 Fed. 1, and *Atlantic Coast Line R. Co. v. Woods,* 252 Fed. 428.

It follows that the court did not err in refusing to direct a verdict for the plaintiff in error, nor in overruling the motion in arrest of judgment, as the declaration stated a good cause of action as shown by the authorities hereinafter cited.

Complaints are made with reference to the giving and refusal of instructions. We find such complaints are without merit, other than those which raise the same points that are presented in regard to the Federal Employers' Liability Act, and have been disposed of as above indicated.

There is no just cause of complaint in regard to the examination and cross-examination of witnesses, or in the admission or exclusion of evidence. The errors urged in those respects are highly technical. The damages awarded are not excessive, and the judgment of the trial court is affirmed.

*Affirmed.*