**Perry D. White, Defendant in Error, v. William J. Jackson, Receiver of Chicago & Eastern Illinois Railroad Company, Plaintiff in Error.**

**Gen. No. 26,349.**

1. MASTER AND SERVANT—*when employee within the Federal Employers' Liability Act.* An employee of a railroad company is covered by the Federal Employers' Liability Act if, at the time of his injury, he is engaged in interstate transportation or work so closely related to it as to be practically a part of it.

2. COMMERCE—*when employee engaged in interstate commerce.* A railroad employee injured while engaged in the movement of a

car incidental to its intended employment for interstate transportation is under the Federal Employers' Liability Act.

3. COMMERCE—*when switchman engaged in interstate commerce.* If a switchman was engaged in the movement of a caboose to couple it to an interstate train to which it had been assigned before the movement began and was injured during such movement, he was under the Federal Employers' Liability Act.

4. COMMERCE—*when evidence sufficient to show engagement in interstate commerce.* In an action for damages under the Federal Employers' Liability Act for personal injuries received by a switchman while working as a member of a transfer crew which was at the time of the injury engaged in transferring cabooses belonging to other transfer crews, evidence *held* to warrant the jury in finding that plaintiff was engaged in interstate commerce at the time of his injury.

Error to the Superior Court of Cook county; the Hon. WILLIAM FENIMORE COOPER, Judge, presiding. Heard in this court at the October term, 1920. Affirmed. Opinion filed May 16, 1921. *Certiorari* denied by Supreme Court (making opinion final).

EDWARD W. RAWLINS and CHARLES O. FOWLER, for plaintiff in error; H. T. DICK, of counsel.

JAMES C. MCSHANE, for defendant in error.

MR. JUSTICE MCSURELY delivered the opinion of the court.

Plaintiff, while employed by defendant as a switchman, received injuries. He brought suit for compensation and upon trial had a verdict for $8,500, upon which judgment was entered, which defendant by this writ of error seeks to have reversed.

Plaintiff charged in his declaration and attempted to prove that he was injured in a movement of defendant's cars which were at the time engaged in interstate commerce. The jury found with plaintiff on this question of fact, and the propriety of this finding is virtually the only question presented to this court.

Was plaintiff engaged in interstate commerce at the time he was injured? If so, this case is covered by the Federal Employers' Liability Act, under which this

suit was brought. An employee is covered by this act if he is engaged in interstate transportation or in work so closely related to it as to be practically a part of it. *Shanks v. Delaware, L. & W. R. Co.*, 239 U. S. 556; *Kusturin v. Chicago & A. R. Co.*, 287 Ill. 311. "One employed upon an instrumentality of interstate commerce is employed in interstate commerce." *Erie R. Co. v. Collins*, 253 U. S. 77; *Dickinson v. Industrial Board*, 280 Ill. 342. An engine or car regularly devoted to interstate transportation is such an instrumentality and one employed thereon is covered by the act. *Southern Ry. Co. v. Lloyd*, 239 U. S. 497; *Wheeling Terminal Ry. Co. v. Russell*, 126 C. C. A. 520. One repairing an engine which had been assigned to haul an interstate train some hours afterwards is covered by the act. *Sheehan v. Wabash Ry. Co.*, 214 Ill. App. 347. There is also a line of cases holding that persons engaged in "preparatory movements in aid of interstate transportation," or whose work "facilitated" it, or which is "a necessary incident" to interstate transportation, are covered by the federal act. *Southern Ry. Co. v. Puckett*, 244 U. S. 571; *New York Cent. & H. River R. Co. v. Carr*, 238 U. S. 261 [9 N. C. C. A. 1]; *New York Cent. R. v. Winfield*, 244 U. S. 147 [14 N. C. C. A. 680]. Such a person is one who is assisting in the movement of an engine to a place where it is to be attached to an interstate train. *Norfolk & W. Ry. Co. v. Earnest*, 229 U. S. 116; *Wangerow v. Industrial Board*, 286 Ill. 442. Or one engaged in switching an empty car into position to receive an interstate load. *Breske v. Minneapolis & St. L. Ry. Co.*, 115 Minn. 386, 132 N. W. 337; *Chicago Junction Ry. Co. v. Industrial Board*, 277 Ill. 515. Or one who is preparing an engine to haul an interstate train. *North Carolina R. Co. v. Zachary*, 232 U. S. 248 [9 N. C. C. A. 109]; *Baltimore & O. R. Co. v. Whitacre*, 124 Md. 411. Or a person injured while going to a place where he intends to take the numbers of an interstate train, *St.*

*Louis, S. F. & T. Ry. Co. v. Seale,* 229 U. S. 156. Or a person carrying bolts toward a bridge, to be used in repairing it, which bridge is used in both intrastate and interstate commerce. *Pedersen v. Delaware, L. & W. R. Co.,* 229 U. S. 146 [3 N. C. C. A. 779]. Or a switchman injured while returning from his work which was both intrastate and interstate. *New York Cent. R. Co. v. Winfield,* 244 U. S. 147 [14 N. C. C. A. 680]. There are also many cases holding that a switchman who is assisting in making up or breaking up an interstate train is covered by the act. *Seaboard Air Line Ry. v. Koennecke,* 239 U. S. 353 [11 N. C. C. A. 165]; *St. Louis, S. F. & T. Ry Co. v. Seale,* 229 U. S. 159; *Neil v. Idaho & W. N. R. R.,* 22 Idaho 74, 125 Pac. 331; *Byram v. Illinois Cent. R. Co.,* 172 Iowa 631.

From these illustrative cases it may be said that a railroad employee injured while engaged in the movement of a car incidental to its intended employment for interstate transportation is under the federal act. In some of the cases cited by defendant the next use of the instrumentality, whether intrastate or interstate transportation, was undetermined at the time of the injury. Such a case is *Minneapolis & St. L. R. Co. v. Winters,* 242 U. S. 353 [13 N. C. C. A. 1127].

How does this affect the case at bar? The jury properly could find that defendant's railroad extends through several States and he is engaged in interstate commerce. One of the yards, called "Yards Center," is situated at Dolton, Cook county, Illinois. It is a very large yard handling about 1,600 cars daily. Defendant has ten or twelve regular transfer crews engaged in the hauling of trains of freight cars from this yard to other railroads and places and hauling such trains from such other roads and places back to this yard. Each transfer crew had a regular caboose which carried supplies of various kinds and was the headquarters of the train crew, with a box for clothing to which each one had a key, which caboose they might keep

White v. Jackson, 221 Ill. App. 129.

for years and which was as much a part of the train as the engine. On outward trips the transfer trains left the northbound yard and on the return trains were delivered in the southbound yard. These yards were about a mile apart but were included in Yards Center. Plaintiff was in one of these regular transfer crews, reporting for duty each morning at 7 o'clock. Instead of having each transfer crew transfer its own caboose from the southbound yard where it was delivered, plaintiff's crew was required to transfer all the cabooses together from the southbound to the northbound yard. While plaintiff with his crew was thus transferring a train of thirteen of these cabooses, including its own, a collision occurred between this train and a road engine, causing the injuries to plaintiff involved in this suit. The details of the accident are not in question. In the usual course of its work, after plaintiff's crew had finished transferring the cabooses, it would at once proceed to make up its own transfer train and leave the yard with it, and this train was in interstate transportation. Four of the cabooses which plaintiff's crew was thus transferring at the time of the accident came into the southbound yard during the previous night as part of interstate trains, and left the northbound yard on the day of the accident as part of interstate trains. There was no proof as to the character of the use of the other cabooses. One of these four cabooses belonged to a transfer crew regularly assigned to what was called the stock yards run, that is, it daily left Yards Center for the stock yards in Chicago with a train and each day returned with a train. There is sufficient evidence that these trains both going and coming were interstate trains, made up of cars of the packers at the stock yards and used for transporting their products to other States. While there is controversy on this point, we cannot say the jury were not justified in believing that this

stock yards train, including its caboose, was regularly and daily engaged in interstate transportation.

We are not unmindful of the testimony of the yard-master that no caboose would be attached to a train without his direction, but there is a large amount of evidence as to the regular and usual handling of the cars and trains, including cabooses, to justify the conclusion that the cabooses in question, and especially the caboose on the stock yards train, were daily attached as they were without any specific directions from the yardmaster. It was also shown that this stock yards train was the first to leave the yard every morning, and that plaintiff's crew not only transferred that caboose as described, but usually coupled it to the stock yards train. The accident occurred at about 8 o'clock in the morning, and the stock yards crew was preparing its train for departure. The jury properly could conclude that the assignment of the stock yards train caboose for the stock yards run on the morning of the accident was made before plaintiff's crew started to transfer it from the southbound to the northbound yards. If, then, plaintiff was engaged in the movement of the caboose to couple it to an interstate train, to which it had been assigned before the movement began, and he was injured during this movement, he is under the federal act.

We cannot extend this opinion by comments upon the many cases cited by both parties. There are many presented by defendant which are analogous but can reasonably be distinguished from the case at bar, like *Bishop v. Delano,* 265 Fed. 263, which turned upon the point that plaintiff, during the time he was injured, was off duty. The large number of cases. cited by plaintiff are cumulative in supporting our conclusion herein.

From what has been said above it follows that the objections made to the court's rulings upon instructions and the admissibility of evidence are not of suf-

ficient importance to require a reversal.  For the reasons above indicated the judgment of the superior court is affirmed.

*Affirmed.*

HOLDOM, P. J., and DEVER, J., concur.