Henrietta Runge, Administratrix of the estate of Frederick Runge, Deceased, Appellee, v. Chicago Junction Railway Company, Appellant.

### Gen. No. 27,301.

1. WORKMEN'S COMPENSATION—*question whether death occurred in course of employment as one of fact.* In an action against a railway company for the wrongful killing of plaintiff's intestate, it is a question of fact for the jury whether the death arose "out of and in the course of" decedent's employment, within the meaning of the Compensation Act of 1913, sec. 1, Cahill's Ill. St. 1921, ch. 48, ¶ 201, under the defense that the action is not maintainable because the death is compensable under the act, where the evidence shows that decedent, on the night in question, had finished his day's work in a factory adjoining defendant's tracks and had passed out onto the street on his way home, had turned off the street walk onto a sidewalk on land owned by his employer but separated from the main factory premises by a fence and sidetracks, that the sidewalk was used generally by the public as a public way, and that while walking on such walk across a switch track which connected the sidetracks with defendant's main tracks

he was struck by a freight car which defendant was "kicking" onto the sidetracks.

2. WORKMEN'S COMPENSATION—*inapplicability to wrongful death occurring in interstate commerce.* An action by an administratrix for the wrongful killing of her intestate by a railway company cannot be defeated under the Workmen's Compensation Act of 1913, sec. 29, Cahill's Ill. St. ch. 48, ¶ 229, on the ground that decedent, his employer and defendant were all subject to the act at the time of the death, where the evidence shows that at the time of the accident one or more of the cars in the train which struck decedent were being moved on an interstate journey, it appearing that defendant was switching cars from its main track onto a factory sidetrack and that some of the cars belonged to interstate carriers of other states and were not bound for the sidetrack but were "going home," and that defendant was then engaged in interstate commerce.

Appeal from the Superior Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1921. Affirmed. Opinion filed October 3, 1922.

WINSTON, STRAWN & SHAW, for appellant; JOHN D. BLACK and RODNEY C. GLOVER, of counsel.

JAMES C. MCSHANE, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

This is an appeal from a judgment for $3,500 rendered by the superior court of Cook county against the defendant railway company in an action for damages for negligently causing the death of Frederick Runge, plaintiff's intestate, on or about August 9, 1917. The cause was tried before a jury. At the conclusion of plaintiff's evidence and again at the conclusion of all the evidence defendant moved for a peremptory instruction finding the defendant not guilty. The motions were denied and the jury returned a verdict finding defendant guilty and assessing plaintiff's damages at $3,500. Each party made a motion for a new trial. Defendant subsequently

withdrew its motion, and plaintiff's motion was denied and on February 12, 1921, the judgment appealed from was entered.

The Sefton Manufacturing Company, employer of the deceased, owned in Chicago certain buildings and a manufacturing plant, bounded on the north by 35th street, an east and west public highway, upon which a street railway is operated, on the east by the south branch of the Chicago river, and on the west by the right of way of defendant, immediately west of which is Iron street, a north and south public highway, extending south from 35th street. Defendant's right of way is about 30 feet wide and contains two parallel main tracks, running north and south. Immediately east is a strip of land, about 35 feet wide, belonging to the Sefton Company, but west of its main building and west of a woven wire fence, inclosing a portion of its yard south of said building. There are two sidetracks on this strip of land, which are connected by a switch track at the southerly end of said plant with defendant's east main track. On this strip of land is a sidewalk, running south from 35th street, and west of said sidetracks, to the north line, extended, of a garage of the Sefton Company, where it connects with a brick walk immediately west of the garage. This sidewalk crosses the switch track, connecting the sidetracks with defendant's east main track, about 30 feet north of the garage. Immediately south of the garage and plant is a narrow alleyway, running east and west, and immediately south of this alleyway is the building of the Boynton Wool Scouring Company, and south of this is a large Government building. There is a cement sidewalk extending from said alleyway southward, immediately west of said two buildings, to 37th street, and said sidewalk, together with the Sefton sidewalk, makes a continuous sidewalk from 35th to 37th streets. The main building of the Sefton plant fronts north on 35th

street.   The doorway, through which all employees pass in going to and from their work, opens onto the south sidewalk of 35th street.   Immediately inside the doorway is a time-clock, which all employees are required to punch upon entering or leaving the premises, and by which their time is kept.

There were about 600 or 700 employees in the plant of the Sefton Company.   In leaving the plant some of them walked eastward on 35th street, others walked westward, and others boarded street cars.   It was 100 feet from said doorway westward to the point where the sidewalk on the south side of 35th street connected with the sidewalk which ran south to 37th street.   About 50 of the employees of the Sefton Company, including deceased, were accustomed to use said last-mentioned sidewalk in going to and returning from their work.   There were about 50 persons employed in the Boynton building and about 4,000 in the Government building.   In speaking of said sidewalk one of the witnesses testified: "There were quite a number of people who used the sidewalk; * * * something like two or three thousand people up and down there all the time during the day, and at night there was always someone coming up and down that sidewalk."   Another witness testified: "There were all kinds of people walking on that walk."   It was thus practically a public sidewalk, although north of said alleyway the strip of land on which it ran was owned by the Sefton Company.

The deceased had been working for the Sefton Company about seven or eight years, generally with the basement gang unloading cars, sometimes at the loading platform and sometimes he would ride in an elevator with supplies on a truck.   On the night in question, having been working overtime, he quit about 9 o'clock p. m., and, in company with a fellow workman, went out of the doorway onto the public sidewalk on 35th street, and walked west to said sidewalk, running

south from 35th street, and there turned south, his companion continuing west on 35th street. The latter testified: "Sometimes Runge went down that walk to 37th street and sometimes he went down 35th street west. No regularity about it." Deceased lived about two blocks south and several blocks west of the Sefton plant. After turning south on said sidewalk he was not seen by anyone until his body was found lying along one of the sidetracks about two car lengths north of where the sidewalk crosses the switch track. The following morning upon examination blood and flesh were found, beginning at said crossing and extending north along the switch track and one of the sidetracks to the place where his body was found; no blood or flesh were found south of said crossing. Apparently deceased was knocked down and run over at the crossing by the north end of one of two freight cars, which at the time were being "kicked in" from defendant's east main track by its switching crew onto one of the sidetracks, and, by the movement of the cars, was dragged or carried northward. At the time the two north cars were "kicked in," there were seven cars in the train with the engine at the south end thereof. The city ordinance required that there should be a "brilliant or conspicuous light on the forward end" of the forward car of such a train, yet the evidence shows that there was no light of any kind on the forward car, and no man riding thereon or standing in advance thereof, so as to warn persons of its approach.

The evidence further disclosed that there were side tracks on both the east and the west side of the main building of the Sefton plant. The tracks on the east side were known as the river tracks, and those on the west side where the accident occurred were loading tracks. The Sefton Company manufactured paper boxes, oyster pails and other similar paper products, and cars loaded with paper and other materials, from

which these boxes, etc., were made, were delivered to it on the river tracks, whilst its manufactured products were loaded in cars on the west or loading tracks. The paper and other materials came "from all parts of the country." Defendant's switching crew were accustomed to switch cars to and from all sidetracks every night. They would place the loaded cars containing said materials upon the river tracks and would haul away the empty cars which had been unloaded during the day; and they would haul away from the loading tracks such cars as had been loaded with manufactured products, and put empty cars in their place. On the night of the accident the switching crew first switched cars on the river tracks, hauling out from those tracks seven cars from the Sefton and Boynton plants, some cars loaded and some empty. After passing a switch near 37th street, which connected the east sidetracks with defendant's main tracks, the seven cars and switching engine proceeded northward on defendant's east main track. The two most northerly cars were a Soo Line car and a Puget Sound car, both empty, and it was the purpose of the crew to place these two empty cars on the loading tracks of the Sefton Company, and to haul away from those tracks the cars which had been loaded and were ready for shipment. The conductor of the train, as a part of his usual work, made a list containing the initials and numbers of the cars thus handled, and he produced this list at the trial. As to the cars shown in the list, he testified: "Two of them were for Sefton's west track and the rest were *going home;* * * * they were all going home except the Puget Sound and the Soo Line, and they were going to Sefton's west track; * * * the St. Louis & Iron Mountain Southern car was going home." He also gave the names and numbers of four other cars, all of which, he said, were going home, viz., a New Hampshire car, a Boston and Albany car, a Michigan Cen-

tral car and a New Haven car. And, referring to where the engine usually left such cars, he further testified: "The engine took them to State line and switched them out and classified them for the different yards they were going to." This testimony, which is uncontradicted, tends to show that at least one of the cars in said train at the time of the accident was being moved on an interstate journey.

The sole ground here urged by counsel for defendant for a reversal of the judgment is that the trial court erred in refusing defendant's peremptory instruction, presented at the close of all the evidence, for a directed verdict in its favor, and for the reason that the uncontradicted evidence discloses that the deceased, his employer, the Sefton Company, and defendant, were all under the Illinois Workmen's Compensation Act at the time of the death of deceased. Counsel rely on sections 3 and 29 of said Act [Cahill's Ill. St. ch. 48, ¶¶ 202, 229]. Their argument is, in substance, that defendant was engaged in the business of carriage by land, that the Sefton Company was engaged in a business where statutory regulations controlled the guarding and operation of the elevator in its plant used by deceased in his employment, that the death of deceased arose out of and in the course of his employment and was caused under circumstances creating a legal liability in the defendant to pay damages, and that, hence, the right of recovery was, under the provisions of section 29 of said Compensation Act, subrogated to the Sefton Company, the employer, and an action cannot be maintained by plaintiff, as administratrix, etc.

Counsel for plaintiff contends, in reply, that the trial court did not err in refusing to give the peremptory instruction because the evidence does not show the presence of two conditions, each essential to the application of section 29 of said Compensation Act, viz.: (a) that compensation was payable on ac-

count .of° the death of deceased, and (b) that defendant was bound by said act at the time and place of the accident. , As to the first condition mentioned, counsel argues that it is not shown by the uncontradicted evidence that the death of deceased arose out of and in the course of his employment and that at least this question was one of fact for a jury, and not one of law for the court. The burden is upon the party who claims that compensation is payable to prove the facts essential in that regard. (*Kelly-Atkinson Construction Co. v. Foreman Bros. Banking Co.*, 218 Ill. App. 345, 351; *Savoy Hotel Co. v. Industrial Board of Illinois*, 279 Ill. 329, 335; *International Harvester Co. of New Jersey v. Industrial Board of Illinois*, 282 Ill. 489, 496.) Assuming that deceased and his employer, Sefton Company, were under said Compensation Act, yet compensation was not payable unless the injuries and death of deceased arose "out of" *and* "in the course of" his employment. (Section 1, Illinois Workmen's Compensation Act of 1913, Cahill's Ill. St. 1921, ch. 48, ¶ 201; *Eugene Dietzen Co. v. Industrial Board of Illinois*, 279 Ill. 11, 15 [14 N. C. C. A. 125].) In the present case it appears that the accident happened after the deceased had ceased his work for the day and was on his way home. In *N. K. Fairbank Co. v. Industrial Commission*, 285 Ill. 11, it is said (p. 13): "The employer is liable for compensation only for an injury which occurs to the employee while performing some act for the employer in the course of his employment or incidental to it. When work for the day has ended and the employee has left the premises of his employer to go to his home the liability of the employer ceases, unless after leaving the plant of the employer the employee is incidentally performing some act for the employer under his contract of employment. * * * There may be circumstances under which an employee in going to and returning from the place of his employment

would be held to be in the line of his employment, but those cases would be governed and controlled by their own particular circumstances." In *Central Illinois Public Service Co. v. Industrial Commission*, 291 Ill. 256, it is said (p. 258): "The determination of the question whether an injury arises out of the employment is one which is frequently attended with much difficulty,—not so much in the determination of the rule as in the application of the rule to the case under consideration. This court has in a number of cases quoted with approval the rule laid down in the *McNicol* case, 215 Mass. 497 [4 N. C. C. A. 522]. In considering the question whether or not the injury arose out of the employment the Supreme Court of Massachusetts there said: 'It arises out of the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. * * * *The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant.* It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence.' " In *Wabash Ry. Co. v. Industrial Commission*, 294 Ill. 119, it is said (p. 122): "This court has held that an injury occurring to an employee while on his way to or from his work may or may not arise out of and in the course of the employment, depending upon the special facts of the particular case. (*N. K. Fairbank Co. v. Industrial Commission*, 285 Ill. 11.) * * * One of the controlling factors in determining the question here under consideration is whether the employee at the time of the accident was within *the orbit, area, scope or*

*sphere of his employment.* The usual rule followed in workmen's compensation cases appears to be that a man's employment does not begin until he has reached the place where he is to work or the scene of his duty and does not continue after he has left the premises of his employer, * * * and it is ordinarily held that if an employee is injured on the premises of the employer in going to or from work he is entitled to compensation for such injuries. * * * Whether an employee in going to or from the place of his employment is in the line of his employment will depend largely on the particular facts and circumstances of each case. There must necessarily be a line beyond which the liability of the employer cannot continue, and the question where that line is to be drawn has been held to be usually one of fact.'' (See also, *Schweiss v. Industrial Commission,* 292 Ill. 90, 93.) In the present case, as above shown, after the deceased had ended his work for the day he went out of the plant of the Sefton Company by the usual exit onto the south sidewalk of 35th street, a public highway. He was no longer on his employer's premises. He walked, in company with a fellow workman who was also going home, a distance of about 100 feet, until he reached the north and south sidewalk running between 35th and 37th streets, where he parted from his companion and turned and walked south, a distance of about 500 feet, to the place of the accident. While traveling this 100 feet on 35th street with his companion and mingling with the general public, we do not think that he was "within the orbit, area, scope or sphere of his employment" or that the relation of master and servant existed between his employer and him. It was entirely optional with him, as with his companion, whether he continued westward on 35th street or turned south. As his companion testified there was no regularity in his conduct in this regard when leaving the

plant for his home. On this occasion he did turn south and walk southward on said north and south sidewalk, which was on land owned by his employer, but outside of its plant proper. And the questions arise: Did he re-enter the orbit, area, scope or sphere of his employment? Did he re-establish the relation of master and servant, and the rights and obligations incident thereto by merely turning for his own convenience south upon said sidewalk? We think that both questions should be answered in the negative. The sidewalk was not on the "premises" of his employer within the meaning of that term as construed in some decided cases. It was practically a public sidewalk, used, as the evidence shows, not only by some of the employees of the Sefton Company, but by more than a thousand people daily. While deceased was using this sidewalk just prior to the accident his relationship to his employer was not other or different from that existing between his employer and any member of the public who might then be using the sidewalk. He was not upon any errand or performing any service for his employer and the latter did not have any right of control over him. There was no causal connection between his employment, or the conditions under which he worked, and the resulting injury. The causative danger was not peculiar to his work but was "common to the neighborhood," i. e., to all who used the sidewalk. At any rate, the question whether the injuries and death of deceased arose out of and in the course of his employment was one of fact for the jury to determine, and, hence, it seems clear to us that, under all the facts and circumstances in evidence, the trial court did not err in refusing to grant defendant's motion for a peremptory instruction in its favor. (See also, *Kowalek v. New York Consol. R. Co.*, 229 N. Y. 489, 492.)

As to the second condition, mentioned by plaintiff's counsel, viz., that the evidence does not show that de-

fendant was bound by said Compensation Act at the time and place of the accident, we think that the evidence sufficiently tends to show that defendant, in then switching said train of cars which caused the injuries and death of deceased, was engaged in interstate commerce, and, thereby, was not under said Compensation Act and was not entitled to the benefit of section 29 thereof, here invoked by it, and that the present action by plaintiff, as administratrix, etc., is properly maintainable. (*Goldsmith v. Payne*, 300 Ill. 119, 121; *Devine v. Chicago, R. I. & P. Ry. Co.*, 266 Ill. 248, 251; *Wangerow v. Industrial Board*, 286 Ill. 441, 446; *New York Cent. & H. River R. Co. v. Carr*, 238 U. S. 260, 263 [9 N. C. C. A. 1].)

Our conclusion is that the judgment of the superior court should be affirmed, and it is so ordered.

*Affirmed.*

BARNES, P. J., and MORRILL, J., concur.