# Cecil Brown, Appellee, v. Illinois Terminal Company, Appellant.

1. NEGLIGENCE—*what is gross negligence.* Gross or wilful misconduct is such lack of care for the rights of others as implies a disregard of consequences or willingness to inflict injury, even though there be no element of ill will toward the party injured.

2. NEGLIGENCE—*when gross negligence is a question for jury.* Whether a state of facts discloses gross or wilful misconduct on the part of a defendant is a question of fact for the jury.

3. RAILROADS—*when train schedules may be considered in crossing accident.* In an action for injuries at a railroad crossing, the jury had the right to take into consideration the fact that the train in question was not running on a regular schedule.

4. RAILROADS—*when wilful misconduct a question for jury.* In an action by an automobilist for injuries at railroad crossing, whether train crew were guilty of wilful and wanton misconduct, held for the jury.

5. RAILROADS—*when contributory negligence not a defense.* If train crew were guilty of wilful and wanton misconduct, contributory negligence of driver of automobile at crossing was not a defense.

6. RAILROADS—*failure to look and listen.* It is usually a question of fact for the jury to determine, in view of all surrounding circumstances, whether failure to look and listen at a railroad crossing constitutes a lack of due care.

7. RAILROADS—*when contributory negligence a question for jury.* Whether driver of motor vehicle struck by a train was in the exercise of due care held for the jury.

8. NEGLIGENCE—*when questions for jury.* Question of negligence in a particular case only becomes a question of law when the court can say that but one reasonable inference can be drawn from the facts, and that inference is one of negligence.

9. EVIDENCE—*when properly excluded as to admitted facts.* It was not error to exclude evidence to prove a fact which was admitted by stipulations.

10. WORKMEN'S COMPENSATION—*when third party liable to injured servant.* Where master and servant are both under the Workmen's Compensation Act and the servant is injured through the negligence of a third party, a carrier engaged in interstate commerce, the servant can recover from the third party.

11. COMMERCE—*when empty returning car engaged in interstate.* An empty car returning from carrying an interstate shipment was in interstate commerce until it reached the owner to whom it was billed and from whom it had carried the interstate shipment.

12. INSTRUCTIONS—*propriety of refusing abstract instructions.* Court did not err in refusing to give an instruction abstract in form, though it stated a correct proposition of law.

13. INSTRUCTIONS—*misleading.* Court did not err in refusing a requested instruction stating a correct principle of law, where it had a tendency to mislead the jury.

14. INSTRUCTIONS—*requests covered by given instructions.* Court did not err in refusing requested instructions where the field was sufficiently covered by given instructions.

15. DAMAGES—*when excessive.* A verdict for $15,000 was excessive for the loss of a left arm of a person earning $100 per month, and should be reduced to $12,000.

Appeal by defendant from the Circuit Court of Madison county; the Hon. GEORGE A. CROW, Judge, presiding. Heard in this court at the October term, 1924. Affirmed on remittitur; otherwise reversed and remanded. Opinion filed February 9, 1925. Rehearing denied March 24, 1925.

E. J. VERLIE and H. S. BAKER, for appellant.

POPE & DRIEMEYER, for appellee.

MR. JUSTICE BOGGS delivered the opinion of the court.

Appellee was employed by a firm of contractors who were engaged in constructing a hard surfaced road near Roxana, Illinois. Appellee was hauling a load of crushed rock over appellant's right of way and track when the truck he was driving was struck by an empty oil tank car being pushed in front of one of appellant's engines. Said truck was wrecked, appellee was thrown in front of said car and his left arm was run over and crushed so badly that it became necessary to amputate it above the elbow. He also suffered a scalp wound and some bruises and scratches on his face. To recover for said injuries, suit was brought against appellant in the circuit court of Madison county, where a trial was had, resulting in a verdict and judgment for $15,000. To reverse said judgment this appeal is prosecuted.

The declaration consisted of three original counts and one additional count. The first count charged general negligence in the operation of said train. The second count charged a failure to ring a bell or sound a whistle as required by statute. The third count and the additional count charged wilfulness and wantonness on the part of appellant's employees in the operation of said train. Each count of the declaration alleged that the defendant was engaged in interstate commerce, and the first and second counts alleged due care on the part of appellee. A plea of the general issue was filed, and it was stipulated that all evidence admissible under any special plea or verified special plea properly pleaded should be admitted under the plea of the general issue.

The hard road under construction was known as the Alton and Edwardsville road, and crossed at right angles the track of appellant near Roxana. Piles of crushed stone and sand were deposited about 20 feet from the north side of appellant's track, where there was a loading bin.

Upon the day in question, appellee loaded a Ford truck with crushed stone, and then proceeded west on the north side of said track, traveling some 60 or 70 feet to said crossing over appellant's track, at which point he pulled out around a telephone post and on to the crossing, where said collision and injury took place.

It is first contended by counsel for appellant that the court erred in refusing to direct a verdict in favor of appellant at the close of appellee's evidence, and again at the close of all the evidence, on the third and additional counts of said declaration, motions to that effect having been made. Counsel contend that the evidence wholly fails to show wilful or wanton conduct on the part of appellant's employees in charge of said train, just prior to and at the time of said collision.

The evidence on the part of appellee as to the speed of said train and as to the ringing of the bell or blowing of the whistle on said engine is as follows:

Appellee testified that he listened and that he did not hear "either the bell or the whistle." The witness Brigham testified that he was standing about 50 feet south of appellant's track and saw the collision; that the train was running about 25 miles per hour and that he did not notice it slacken its speed; that he did not recall hearing any bell rung; that the whistle was sounded when the truck "might have been a few feet or so from the track. I heard the train whistle and would say that it was from 200 to 300 feet east of the crossing, and at that time I would say that the truck either had its front wheels on the track, or was from a foot to eighteen inches of it." The witness Ament testified that: "I was right at the railroad track when the train passed me. I saw the train hit the truck. * * * I didn't hear the bell ring nor I didn't hear the whistle blow." The witness Young saw the collision and testified that "the train was going 25 miles per hour. A whistle on the locomotive engine was sounded just immediately east of the crossing. The bell on the engine was not ringing. * * * There was no one standing on the front end of the tank car."

The evidence on the part of appellant with reference to the speed of the train was confined to the testimony of the engineer, the conductor, the fireman and the section foreman. The testimony of these witnesses is to the effect that said train was running from 12 to 15 miles per hour at the time of the accident. The engineer, the conductor and the fireman all testified that the whistle was blown and the bell was ringing all the time. The section foreman testified that he heard the whistle blown, but did not remember with reference to whether or not the bell was rung. The engineer testified: "The first time I saw the truck it

was about 100 feet east of the crossing. It was then going west, parallel with the track. I saw him make the turn toward the north side of the track. As he did so, I saw the driver look over his shoulder. He did this just before he made the turn. He was then going 6 or 7 miles an hour. My train was going 12 or 15 miles an hour. I did not slacken the speed of the train when I saw him, as it appeared to me that he was going to stop. As soon as I saw that he was not going to stop, I set the brakes, but it was too late." S. T. Jones, the conductor, testified that he was riding on the front end of said oil car, that: "I first saw the plaintiff driving the truck when he was about 15 feet from the car. He was then driving south. I was right on the front end, and I jumped off to the other side of the ditch." On cross-examination he testified: "I did not see the truck until it got within 15 or 16 feet from the crossing, and the front wheels had passed in front of the train and started to go on the track. That was the first time I saw it. I was looking ahead down the track and did not notice any truck running alongside of the train."

In addition to the foregoing evidence in reference to the occurrence just prior to said collision, appellee testified as follows: "In going this 60 feet from the bin to the highway you would drive west parallel with the railroad track, and then when you got to the highway you made a sharp turn and immediately you would be upon the railroad track. At the time of the accident I pulled out with a load of rock and the truck ran through the sand and it was hard to pull and I had to keep in the beaten rut or I would kill the motor, and I was watching to keep this track and make the proper turn across the railroad and I did not see the train until it was close on to me. The front wheels of the truck were on the track when I first saw the train." He further testified that in driving along said track he was about 8 or 10 feet north of it, and

further testified: "The tracks of the railroad company were in plain view, but I would have to turn my head to the left and look back to see a train coming, but there was nothing at all to obstruct my view if I did so." He further testified that just prior to and at the time of the collision he was running the truck in low gear, at about 4 miles an hour. On redirect examination he testified that after he had loaded said truck and just before he got ready to start, he looked east and did not see any train in sight, that after that he paid attention to his driving.

So far as the location of said loading bin, the line traveled by appellee along said right of way, the speed of said truck and the condition of the road where appellee had to drive is concerned, there is practically no conflict in the evidence.

Gross or wilful misconduct is defined as such lack of care for the rights of others as implies a disregard of consequences or willingness to inflict injury, even though there be no element of ill will toward the party injured. *Illinois Cent. R. Co. v. Leiner,* 202 Ill. 624; *Cleveland, C., C. & St. L. Ry. Co. v. Ricker,* 116 Ill. App. 428. The law further is that whether a state of facts discloses gross or wilful misconduct on the part of a defendant is a question of fact for the determination of the jury. *Voorhees v. Chicago & A. R. Co.,* 215 Ill. App. 531; *Heidenreich v. Bremner,* 260 Ill. 439; *Illinois Cent. R. Co. v. Leiner, supra.*

The evidence in this case shows that the employees of appellant in charge of said engine were familiar with the situation near said crossing with reference to the piles of sand and crushed rock, the location of the loading bin, the line traveled by said trucks in going from said loading bin to said highway and across appellant's track, and they knew or by the exercise of any diligence whatever should have known that trucks hauling materials were likely to cross over said track on said highway at any time. Then, too, the jury

would have the right to take into consideration the fact that appellant's train was not a train running on a regular schedule, and under circumstances that would give some notice to persons crossing its tracks as to when they might expect said train. We therefore hold that the court did not err in refusing to direct a verdict for appellant on said counts charging wilful and wanton conduct on the part of appellant.

It is next contended by appellant that appellee was guilty of contributory negligence; that his view of the track in the direction from which said engine and car were approaching was unobstructed, and that his failure to see the same and avoid being injured was such negligence as should bar a right of recovery on said first and second counts. It is unimportant, however, as to whether or not appellee was guilty of contributory negligence, if appellant's conduct was wilful and wanton as charged in the third and additional counts of the declaration. However, it may be observed that it cannot be said as a matter of law that the failure to look or listen, under all circumstances, will bar a right of recovery. It is usually a question of fact for the jury to determine, in view of all surrounding circumstances, whether the failure to look or listen constitutes a lack of due care. *Dukeman v. Cleveland, C., C. & St. L. R. Co.*, 237 Ill. 104-107; *Chicago & E. I. R. Co. v. Crose*, 214 Ill. 602-605; *Chicago City R. Co. v. Nelson*, 215 Ill. 436-440; *Gibbons v. Aurora, E. & C. R. Co.*, 263 Ill. 266-272. We are inclined to the opinion and hold that under all the facts and circumstances surrounding the injury in question as heretofore referred to, it was a question of fact for the jury as to whether appellee, just prior to and at the time of his injury, was in the exercise of due care for his own safety. The question of negligence in a particular case only becomes a question of law when the court can say that but one reasonable inference can be drawn from the facts, and that that inference is one

of negligence. *Chicago & E. I. R. Co. v. O'Connor,* 119 Ill. 586; *Illinois Cent. R. Co. v. Larson,* 152 Ill. 326.

It is next contended by appellant that the court erred in refusing evidence on the part of appellant to the effect that appellee was under the Workmen's Compensation Act at the time of the collision. We are of the opinion and hold that this assignment of error is not well taken, in view of the fact that prior to the trial of said cause the parties hereto stipulated that appellee and his employer, the Young & Dent Construction Company, were both under the Workmen's Compensation Act, and for the further reason that appellee in his declaration assumed the burden of proving that appellant, just prior to and at the time of said collision, was engaged in interstate commerce. In order to recover, appellee must sustain said allegation. It was therefore not necessary that the jury should make a finding as to whether appellee was under the Workmen's Compensation Act, as that fact was conceded, and was unimportant if appellant at the time in question was engaged in interstate commerce.

It is next contended by appellant that the court erred in refusing to permit the introduction of evidence tending to show that appellant was engaged in intrastate commerce and not in interstate commerce at the time of said collision. The evidence which appellant proffered was to the effect that appellant had certain storage yards located some 2,500 feet from the plant of the White Star Refining Company, the owner of said tank car, and that there had been a certain custom and understanding between appellant and said refining company that cars loaded and shipped out in interstate commerce, when returned to appellant, billed to said refinery, should be stored by appellant in its storage yard and held until the said refining company should request a delivery of the same; that

said refining company had something like 100 oil cars, and that it only had track room for some 12 or 15 of said cars, and that as between appellant and the White Star Refining Company, the delivery of said cars from said storage track to the plant of said refining company was a mere switching transaction, and that the transportation of said cars in interstate commerce was ended when the same reached the storage tracks of appellant.

The car in question had been loaded on October 2, 1922, at the plant of the White Star Refining Company, and was delivered to appellant, billed to Detroit, Michigan. Said car was so delivered, unloaded, and thereafter returned empty over the rails of the Toledo, St. Louis & Western Railroad, and was by that company delivered to appellant on October 26, 1922, under a consignment and billing from Detroit, Michigan, to said refining company at Wood River, Illinois. On October 26, this car was taken by appellant to its storage yard in Roxana, and on October 28, at the time of the collision in question, the same was being transported from the Roxana storage yards of appellant to the plant of the White Star Refining Company in Wood River. The movement of this car as just stated was stipulated by the parties hereto prior to the trial of this cause.

We are of the opinion and hold that evidence of the general custom and understanding sought to be shown by appellant as to the handling of said cars was properly refused. The stipulation clearly discloses that the car in question was being returned to the White Star Refining Company, under a billing, not to appellant at Roxana, but to the White Star Refining Company at Wood River, and at the time of said collision it had not yet reached its final destination under said billing. Said car was therefore then traveling in interstate commerce. *Dickinson v. Industrial Board*, 280 Ill. 342; *Kusturin v. Chicago & A. R. Co.*, 287 Ill. 306; *Curran v. Chicago Short Line Ry. Co.*, 198 Ill.

App. 154; *White v. Jackson*, 221 Ill. App. 129; *Jeneary v. Chicago & I. Traction Co.*, 225 Ill. App. 122-129; *Runge v. Chicago Junct. Ry. Co.*, 226 Ill. App. 187-197. Quite a full discussion of the question as to when a car or a person is engaged in interstate commerce is contained in *White v. Jackson, supra*, and a great number of cases are cited from our Supreme and Appellate Courts, and also from the United States Supreme Court.

In view of the foregoing authorities, we are of the opinion and hold that the court did not err in refusing the evidence offered, especially in view of the fact that there is nothing to show, and no evidence was offered, to the effect that this particular car was being handled in that way, or that the White Star Refining Company had requested appellant to deliver the same. So far as the record discloses, it was being delivered under said billing from Detroit, Michigan, to the White Star Refining Company at Wood River.

It is next contended by appellant that the court erred in refusing the thirteenth and fourteenth instructions offered on behalf of appellant.

Instruction number thirteen is abstract in form, and even though it states a correct proposition of law, it was not error for the court to refuse the same.

While instruction number fourteen states a correct principle of law, we are of the opinion that the court did not err in refusing the same, as it would have a tendency to mislead the jury, in that it tells the jury that if the movement of appellant's train at the time in question had no direct relation to or connection with the transportation of persons or property from one State to another, appellant would not be engaged in interstate commerce. The jury might conclude from the reading of said instruction that the car in question, not being used for the transportation of either persons or property at the time in question, would not be engaged in interstate commerce. In

other words, they might not understand that an empty car, traveling as this car was, could be engaged in interstate commerce. We think that appellee's ninth given instruction correctly stated the law with reference to interstate commerce, so far as this case is concerned, and it was not necessary that the jury be further instructed on this particular point. It might also be observed that all of the instructions given on behalf of appellee which directed a verdict required the jury to find, before appellee was entitled to recover, that appellant was engaged in interstate commerce at the time of said collision.

Considerable discussion is made by counsel for appellant in his brief and argument with reference to the construction that should be placed on section 29 of the Workmen's Compensation Act [Cahill's Ill. St. ch. 48, ¶ 229], with reference to the rights of an injured person who is under said Act, to sue and recover for an injury by a third person not under the same. We do not deem it necessary to give this matter extended consideration, for the reason that counsel for appellant concedes that if appellant was engaged in interstate commerce. at the time in question, appellee would have a right to sue, and if a proper showing was made, to recover against appellant, even though at the time in question appellee and his employer were both under said Act.

Lastly, it is contended that the verdict is excessive. Appellee received a scalp wound and some scratches on the face, and was rendered unconscious and remained so for a short time after said collision, but the only permanent injury suffered by him was the loss of his left arm above the elbow. While at the time of the injury appellee was earning about $100 per month, the record shows that prior to his employment with the construction company he had been working on his father's farm, and there is nothing shown as to his earning power as a farm laborer. At the time of the

trial he was working in a creamery and earning $32 per month. It seems to us on this record that the verdict of the jury is excessive, and in so holding we are taking into consideration the fact that ordinarily it is for the jury to fix the amount of the damages an injured person is entitled to recover, and that proof of said amount need not be made in dollars and cents.

If appellee enters a remittitur of $3,000 within twenty days of the filing of this opinion, leaving a judgment of $12,000, the same will be affirmed. Otherwise the judgment will be reversed and the cause will be remanded.

*Affirmed on remittitur; otherwise reversed and remanded.*