MAUD NEICE, Admx., Defendant in Error, *vs.* THE CHICAGO AND ALTON RAILROAD COMPANY *et al.* Plaintiffs in Error.

*Opinion filed June 21, 1912.*

1. RAILROADS—*when person on depot platform is a trespasser.* A person who goes upon a depot platform intending to obtain a ride unlawfully and contrary to the established rules of the company, of which he has knowledge, is a trespasser, and the only duty which the railroad company owes to him is not to wantonly injure him.

2. SAME—*general rule as to when obligation of the company toward trespasser arises.* Ordinarily, in case of a trespasser on railroad tracks the obligation of the company to avoid injuring

him arises at the time his perilous position becomes known to those in charge of the train.

3. SAME—*when company is liable for an injury to a trespasser though his presence was unknown.* Running a train in the night time through unlighted station grounds without a headlight or without any warning, and along a platform where persons might reasonably be expected to be on legitimate business, shows a reckless and wanton disregard of the safety of such persons, and if a person on the platform is thereby struck and killed the company is liable, even though he may have been a mere idler or trespasser, having no legitimate business there.

4. SAME—*specific ill-will toward individual or an intention to injure him is not necessary.* If a railroad company operates its trains in reckless disregard of the safety of persons who have a right to be, and may reasonably be expected to be, upon the tracks at a particular place, it is not necessary, in order to make the company liable for an injury to a trespasser at such place, that there should be specific knowledge of his presence on the track or specific ill-will toward him or intention to injure him.

5. EVIDENCE—*a wife cannot testify to conversations with husband.* Section 5 of the Evidence act only permits a husband or wife to testify to any admission or conversation during the marriage relation where the suit is between such husband and wife, and does not authorize proof of such conversation where the wife is suing, as administratrix, for damages for the husband's death; but the admission of such evidence is harmless where the fact disclosed is proved by other competent evidence.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the City Court of Granite City; the Hon. J. M. BANDY, Judge, presiding.

WARNOCK, WILLIAMSON & BURROUGHS, (J. A. CONNELL, of counsel,) for plaintiffs in error:

Persons about the depot premises or private grounds of a railroad company for their own convenience, and not for the purpose of taking lawful passage upon the company's trains or having business with the company, are trespassers. *Railroad Co.* v. *Eicher,* 202 Ill. 556; *Railroad Co.* v. *Godfrey,* 71 id. 500.

Railroad companies, in the operation of trains, owe no duty to a trespasser or licensee except to refrain from wanton and willful injury and to exercise ordinary care after discovering him to be in a position of peril. *Railroad Co.* v. *O'Connor,* 189 Ill. 559; *Railroad Co.* v. *Eicher,* 202 id. 556; *Thompson* v. *Railroad Co.* 226 id. 542.

No duty devolved upon the defendants to keep a look-out or comply with speed ordinances, to ring a bell or blow a whistle, as against trespassers upon their grounds, and the failure to comply with such requirements does not support a presumption or allegation of wanton or willful negligence. *Martin* v. *Railroad Co.* 194 Ill. 138; *Railroad Co.* v. *Eicher,* 202 id. 556; *Thompson* v. *Railroad Co.* 226 id. 542.

Even though the train crew have knowledge that persons have been in the habit of crossing railroad tracks at places other than public crossings, the running of the train in violation of an ordinance limiting speed and requiring a headlight, or without keeping a lookout, etc., does not constitute wanton or willful negligence. *Railroad Co.* v. *O'Connor,* 189 Ill. 559; *Railroad Co.* v. *Eicher,* 202 id. 556.

D. J. SULLIVAN, for defendant in error:

The provision of the statute prohibiting the introduction of evidence of transactions or conversations between husband and wife only applies to cases where one is called to testify for or against the other. *Deniston* v. *Hoagland,* 67 Ill. 268; *Galbraith* v. *McLain,* 84 id. 379; *Mueller* v. *Rebhan,* 94 id. 148.

At the time defendant in error's intestate was struck he was upon the platform forming part of a cross-walk constructed for the use by the public in going to and from said depot, and any person on such cross-walk or platform, on business with the company, would not be a trespasser. *Railroad Co.* v. *Hammer,* 72 Ill. 347; *James* v. *Railroad Co.* 194 id. 333.

Where a person is upon a walk where the public have a perfect right to go for any legitimate purpose, a person injured on such walk will not be presumed to be a trespasser. The law does not presume wrongdoing. *Cartwright* v. *McGown,* 121 Ill. 388; *Munn* v. *Burges,* 70 id. 604; *Phillips* v. *Roberts,* 90 id. 492; *Railroad Co.* v. *Hammer,* 72 id. 347; 3 Thompson on Negligence, sec. 2675.

A railroad company will be liable, even to a trespasser, if it wantonly or willfully injures him after becoming aware of his peril; and the company will be held to have had knowledge of the presence of such person when its failure to know of his presence was due to wanton or willful misconduct upon the part of the servant in charge of its train. *Railway Co.* v. *Bodemer,* 139 Ill. 607; *Swanson* v. *Railway Co.* 242 id. 394; *Railroad Co.* v. *Leiner,* 202 id. 633.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The defendant in error, Maud Neice, administratrix of her deceased husband, L. B. Neice, recovered a judgment in the city court of Granite City against the plaintiffs in error, the Chicago and Alton Railroad Company and the Chicago, Burlington and Quincy Railroad Company, for $3500 damages suffered by her, as widow, by the death of her husband, which was caused by a train of the Chicago, Burlington and Quincy Railroad Company on March 8, 1910, and the Appellate Court for the Fourth District affirmed the judgment. A writ of *certiorari* was granted to bring the record into this court for review.

At the conclusion of the evidence for the plaintiff the defendants asked the court to direct a verdict of not guilty, and the attorney for the plaintiff then admitted that at the time Neice was killed he was not a passenger, as had been alleged in the declaration, and the declaration was amended by leave of court. When the plaintiff had finished amend-

ing the declaration and filing additional counts and making
the amendments permitted on the trial the declaration con-
tained six counts, in which it was alleged that Neice was
on the platform at the depot of the Chicago and Alton
Railroad Company, between the tracks in the city of Ven-
ice, where he had gone for the purpose of obtaining in-
formation in reference to being carried and to be carried
by the Chicago and Alton Railroad Company from the city
of Venice to the city of Roodhouse, and that he was struck
and killed by an engine of the Chicago, Burlington and
Quincy Railroad Company.  The first count charged, in
general terms, negligent operation of the Burlington train.
The second charged negligence in exceeding the speed limit
of an ordinance.  The third charged negligence in operat-
ing the train without a headlight and without blowing a
whistle or ringing a bell.  The fourth charged negligence
in the violation of an ordinance requiring a bright light to
be displayed conspicuously on the front end of the train.
The fifth (or first additional) count charged the defendant
with willfully and wantonly, and in reckless disregard of
the safety of persons who might be upon the platform,
driving the engine at a dangerous rate of speed without
ringing a bell or blowing a whistle and without having a
sufficient headlight on the engine.  The sixth (or second
additional) count made a similar charge of wanton or will-
ful conduct in running the engine past the depot and cross-
walk, in the night time, at a high rate of speed without a
headlight and without ringing a bell or blowing a whistle.
The court denied the motion for a directed verdict and the
defendants waived the right to assign error on the ruling
by introducing evidence in their own behalf, but renewed
the motion at the close of all the evidence, when it was
again denied and an exception taken.

The Chicago and Alton Railroad Company maintained
a depot in the city of Venice, and on the east side of the
depot building there were three tracks, running north and

south. The track next to the building was called the running or storage track. The next track belonged to the Alton, and was used for south-bound traffic by the two defendants and the Big Four Railroad Company. The third track belonged to the Big Four Railroad Company, and was used for north-bound traffic by that company and the defendants. There was a board walk extending east from the depot building across the running track and south-bound track to a platform about fifty feet long, running north and south between the second and third tracks, which were used for traffic. The walk and platform were used in going to and from trains and by persons having business at the depot. On the controverted questions of fact the evidence for the plaintiff to be considered by the court was to the following effect: L. B. Neice was a railroad employee who had worked for the Chicago and Alton Railroad Company at Roodhouse for a number of years and for a short time prior to his death had been a brakeman for the Wabash Railroad Company. He was on a sixty days' leave of absence from the latter company and was looking for a more satisfactory job. His wife was staying at the residence of her parents at Granite City, two or three miles north of Venice. He obtained employment as a car repairer for the Alton at Roodhouse, and on March 8, 1910, came to the place where his wife was staying and helped to pack up their goods, which were stored there, intending to move to Roodhouse. The usual supper hour was between five and six o'clock and it was somewhat earlier that evening. Some time before six o'clock he ate his supper and taking a railroad lantern started for Venice. It is uncertain at what time he reached the depot at Venice, but he made inquiries there as to who was the conductor of the Chicago and Alton freight train which was due from the south between 7:30 and 8:00 o'clock P. M. and asked if it would stop at Venice. He was told that it was not customary to stop, but the train would stop because they

had a stockman to pick up. The Alton kept a ticket agent
at its depot, whose hours were from 6:40 A. M. to 7:07
P. M., and he was absent from the depot at the noon hour
and at his supper hour, which was from 6:00 to 6:40. The
ticket office was closed and the lights put out at about 7:20,
but the waiting room was left open and that part of the
office used by the yardmen was also open, and the depot
grounds were dark. Freight trains did not carry passen-
gers, and, besides the train crew, carried none but men in
charge of stock and employees who had passes stamped on
the face, "Good on freight trains." There was no evidence
that Neice had any transportation entitling him to ride on
the freight train and he made no inquiry for a ticket. The
freight train on the east track reached the station between
7:30 and 8:00 o'clock. John Pease, a stockman who had
stock on the train which was loaded at East St. Louis, had
missed the train there and had come to Venice on an in-
terurban car. The trainmen had been notified to stop at
Venice and take him aboard, and he had been staying about
the waiting room for an hour or more. As the train ap-
proached he walked east from the depot across the walk to
the platform between the second and third tracks. Neice
followed him and asked if the train was going to pick up
anything, and Pease said nothing he knew of, except him-
self. Pease asked Neice if he was going up, and he said
he would like to go. The train was then passing them, and
before it came to a stop a freight train of the Burlington,
consisting of an engine, freight car and caboose, ran past
the platform, going south, at a rate of between twenty-five
and forty miles an hour without any headlight and without
ringing a bell or blowing a whistle. The end of the pilot
beam struck Neice and threw him twenty-five feet, causing
his death. Neither the fireman nor engineer saw Neice,
although they testified that they were in their places, and
the fireman said he was sitting on the seat on the left side
of the cab,—the side Neice was on. The train did not stop

and the fireman and engineer did not know until the next morning that there had been an accident. There was an ordinance of the city of Venice prohibiting the running of passenger trains at a greater rate of speed than ten miles an hour and freight trains at a greater rate than six miles an hour, and requiring a bright light to be conspicuously displayed in the night time on the front and rear ends of all trains while in motion. There was contradictory evidence for the defendants as to the rate of speed, the ringing of the bell and the existence of a headlight, but it could not be taken into account on the motion to direct a verdict.

The grounds upon which it is contended that the court erred are, that Neice was conclusively shown by the evidence for the plaintiff to have been a trespasser; that he had not brought himself into any such relation with the defendants that they owed him any duty except to refrain from willfully or wantonly injuring him after having ascertained that he was in a perilous position, and that they violated no duty owing to him under that rule. But one conclusion can be drawn from the evidence as to the relation between Neice and the defendants, and it must necessarily be that he intended to obtain a ride to Roodhouse, unlawfully and contrary to the established rules of the company, by means of a train designed for carrying freight and not for passengers. Conductors on freight trains have no authority to accept passengers for carriage in the absence of a rule or practice to the contrary, (*Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Best,* 169 Ill. 301,) and there was not only no such rule or practice but taking passengers on freight trains was forbidden, and the rule was necessarily known to Neice, who had been in the employ of the company. It was expressly admitted at the close of the evidence of the plaintiff that he was not a passenger, and the amendments to the various counts then made changed the allegations to averments that he went on the platform for the purpose of obtaining information with

reference to passage, and to take passage, to Roodhouse.
The evidence showed that the information he was seeking
was about an unlawful passage, and the passage which he
hoped to take was contrary to the rules of the company.
He was a trespasser, and if it had been a mere question of
negligence on the part of those in charge of the Burling-
ton train there could have been no recovery. If the injury
had been due to a negligent omission of duty, it was in-
cumbent on the plaintiff to prove that he was rightfully on
the platform at the time he was struck, and she failed to
make such proof. There was no relation existing between
him and the defendants which created a duty or obligation
toward him as a passenger or one intending to take pas-
sage or transacting any other lawful business on the depot
grounds, and it is true that ordinarily in the case of a tres-
passer the obligation of care to avoid injury arises at the
time that his perilous position becomes known to those
in charge of the train. (*Illinois Central Railroad Co.* v.
*O'Connor*, 189 Ill. 559; *Illinois Central Railroad Co.* v.
*Eicher*, 202 id. 556; *Thompson* v. *Cleveland, Cincinnati,
Chicago and St. Louis Railway Co.* 226 id. 542.) Upon
the right of way of the railroad where the public are not
invited or authorized to go for the transaction of business
with the railroad company, those in charge of the train
must have knowledge both of the presence of the tres-
passer and of his dangerous situation, but depot grounds
and platforms provided by the railroad company for the
use of the public in the transaction of its business, where
persons have a right to be for legitimate purposes and
where they may reasonably be expected, are quite different.
If they are there for a legitimate purpose in connection
with the business of the company they have a right to de-
mand the exercise of reasonable care for their safety. If
they are simply idlers, loiterers or trespassers the duty of
the company is only to abstain from willfully or wantonly
injuring them. But the duty is owing to an indeterminate

part of the public generally, and if there is a disregard of
that duty, one of the general public who happens to be in
such position as to be the sufferer from the violation of
the duty will have a right of action for any injury he sus-
tains. To run a train in the night time over unlighted sta-
tion grounds without a headlight, and without any warning
by bell or whistle, along a platform where persons may
reasonably be expected to be, is evidence tending to prove
a wanton and reckless disregard of the safety of such per-
sons. In such a case it is not necessary that there should
be specific knowledge of an individual on the track or plat-
form or specific ill-will toward or an intention to injure an
individual. In *East St. Louis Connecting Railway Co.* v.
*O'Hara,* 150 Ill. 580, it was considered unnecessary, in or-
der to raise an inference of wanton and willful negligence,
that there should be ill-will directed specifically to plain-
tiff or to have known that he was in such a position as
likely to be injured, where the servants of the company
were running its engine in the dark without a headlight or
a bell ringing, and at a high and dangerous speed, where
persons were likely to be passing. In *Wabash Railroad Co.*
v. *Jones,* 163 Ill. 167, it was said: "The fact of general
use by the public of a track, so as to create a probability of
their presence, might make an act which would otherwise
be merely negligent so reckless as to indicate a disregard
for life or a general disposition to do injury." Consider-
ing alone the evidence offered by the plaintiff, it would jus-
tify an inference of such a reckless disregard of the safety
of persons who might be on the cross-walk and platform
at the depot as would amount to wanton and willful con-
duct, and on that ground the court did not err in submit-
ting the issue to the jury.

There were some erroneous rulings by the court in the
course of the trial. The plaintiff was permitted to testify
to a conversation with her husband when he left her in the
evening, in which he said that he was going to Roodhouse

to take a position which had been given him; that he was going to take the train from Venice, and that she should come to Roodhouse on the following Thursday. The objection was specifically made that she was not competent to testify to any conversation with her husband during the existence of the marriage relation, and the court erred in the ruling. Section 5 of the act in regard to evidence and depositions in civil cases only permits a husband or wife to testify to any admission or conversation of the other in suits between such husband and wife. (*Goelz* v. *Goelz*, 157 Ill. 33; *Geer* v. *Goudy*, 174 id. 514; *Sloan* v. *Sloan*, 184 id. 579; *Wickes* v. *Walden*, 228 id. 56.) The fact that Neice intended to take the train for Roodhouse if permitted to do so was otherwise proved, and the fact that he was inquiring whether the train would stop and who the conductor was, and that he wanted to go on that train, was proved by the defendants. The fact was not in dispute and the ruling did no harm.

There was a track of the Wabash Railroad Company about seventy-five feet east of the three tracks above described, and between the Wabash and the Big Four tracks there was a foot bridge, with railings extending within a few feet of the eastern rail of the Big Four track. There was a sign on the bridge, "Not a Public Way.—Dangerous." The plaintiff was permitted to prove that some people living on Weber street, east of the depot, were in the habit, during the day, of taking a short cut over this bridge and across the depot grounds, and this evidence was improperly admitted. The Alton train was going north over the crossing, so that people could not have been crossing even in defiance of the notice, and there was no such use of the way as would justify an inference of a wanton disregard of the safety of individuals who might be taking that way across the tracks, but we do not think that there was any such prejudicial effect as would justify reversing the judgment.

Error is assigned on the giving of five instructions at the instance of the plaintiff, each of which contained a hypothesis of fact applicable only to particular counts of the declaration and directed the jury to find the defendants guilty if the ·evidence established the facts stated. The objection is that these instructions authorized a finding of guilty on all of the counts although applicable only to particular counts. Each instruction stated facts which would require in the law a verdict of guilty, and there was no direction to ·find the defendant guilty on counts alleging other or different facts. The instructions were not erroneous. As to one of them it is said that it omitted the elements of contributory negligence and due care by Neice, but it required a finding, from a preponderance of the evidence, that the engine was driven in wanton disregard of human life, and the question of contributory negligence or care of Neice was not involved.

Complaint is also made that the court refused six instructions which the defendants asked to have given to the jury. They either directed a verdict of not guilty or advised the jury that the plaintiff could not recover if the jury believed in the existence of certain facts which would make Neice a trespasser. The court did not err in refusing to give these instructions, because the fact of Neice being a trespasser, as he undoubtedly was, would not preclude a recovery if those in charge of the Burlington train were guilty of willful and wanton conduct which caused his death. There was evidence for the plaintiff tending to prove such conduct, and the instructions omitted a necessary qualification.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*