November 10, 1941, the plaintiffs' intestates, Jeannette Trumbo, Dale Harry Harold, Eathel Mills and Warren Ellis Taplin, while riding in an automobile owned by Harold and driven by Taplin, received fatal injuries arising out of a collision, at the Main street crossing of the defendant, the Chicago, Burlington Quincy Railroad Company, in the village of Leland, between the automobile in which they were riding and a locomotive engine and train of cars owned and operated by defendant. The accident occurred shortly after 2:00 o'clock, A.M. The village of Leland, having a population of about 600, is the center of a farming community. Defendant's railroad extends through the village in an easterly and westerly direction. At the crossing there are two main tracks, located toward the south, and two switch tracks. The train was proceeding easterly on the southernmost main track. Main street intersects the railroad in a north and south direction, and is the principal thoroughfare of Leland. It connects with U.S. Highway No. 34, a short distance south of the railroad. The *Page 215 
automobile was traveling south on Main street. Two actions, each substantially identical except as to allegations with respect to heirship, were instituted in the circuit court of La Salle county against defendant, the first by the respective administrators of the estates of the three decedents who were passengers and the second by the administratrix of the estate of the fourth decedent, the driver of the car. The first complaint contains six counts, two counts being devoted to the claim of each administrator. Of these counts, the first two state the cause of action of the administrator of the estate of Jeannette Trumbo, deceased; the third and fourth, the action of the administrator of Harold's estate against the defendant, and counts five and six the complaint of the administrator of the estate of Eathel Mills, deceased. The separate complaint filed by the administratrix of Taplin, the driver of the automobile, consists of two counts. Appropriate allegations of each complaint charge (1) ordinary negligence and (2) willful and wanton misconduct. The first, third and fifth counts of the first complaint on behalf of the administrators of the estates of Jeannette Trumbo, Dale Harry Harold and Eathel Mills, respectively, charge ordinary negligence. Counts II, IV and VI of this complaint allege willful and wanton action on the part of defendant. In like fashion, the first count of the second complaint charges ordinary negligence and its second count, willful and wanton misconduct. Each of the four counts of the two complaints making the charges of willful and wanton operation of defendant's train reallege paragraphs one to six, inclusive, of count I of the complaints, as paragraphs one to six of these counts. These paragraphs alleged, among other things, that the traffic over the crossing was heavy; that the crossing was hazardous and dangerous; that the vision of persons approaching it from the north was wholly obstructed; that defendant failed either to operate signal devices or to maintain at all times a watchman at the crossing, and that it failed to give *Page 216 
warning, by bell or whistle, of the approach of the train. Subparagraphs (a) to (f), inclusive, of paragraph 9 of counts I, III and V of the first complaint and of count I of the second complaint make specific allegations that the deaths of the four intestates were caused by one or more of the acts of negligence on the part of defendant prior to and at the time of death, as previously described in the complaints. All counts alleged the exercise of due care and caution by the plaintiffs' intestates. By its answers, defendant averred the contributory negligence of plaintiffs' intestates, and denied generally and specifically the allegations of negligence and willful and wanton misconduct. Upon motion, the trial court consolidated the causes for hearing. A jury trial followed. At the conclusion of plaintiffs' evidence, and again at the close of all the evidence, defendant moved for a directed verdict in its favor, and tendered instructions seeking withdrawal from consideration by the jury of the willful and wanton counts. The court denied the motions and refused the instructions. The jury found defendant guilty and assessed damages for each of the plaintiffs at $4500. There was no special verdict, nor interrogatory submitted to the jury on the question of willful and wanton misconduct. Successive motions for judgments notwithstanding the verdicts, and for a new trial, were denied, and judgments were entered on the verdicts in favor of each of the plaintiffs. These judgments were affirmed by the Appellate Court for the Second District. Leave to appeal having been granted, the cause is here for further review.
The occupants of the automobile, between seven and eight o'clock on the prior evening, had passed the Main street railroad crossing from the south, on their way to visit Jeannette Trumbo's sister, Alborg Ekdahl, who resided in Leland, about two blocks north and a block west of the crossing. The four remained at the Ekdahl residence until about two o'clock, A.M., when they embarked *Page 217 
upon the fatal journey. According to the undisputed evidence, there were two routes by which they could have reached the crossing. The first and most commonly used, required them to proceed east on Washington street, located about 114 feet north of the railroad, and leads into from the west, but does not pass through, Main street. By the other route, they would travel east on a street directly north of Washington street until Main street was reached and thence south on Main street. A grain elevator building immediately north of the tracks on the west side of Main street, according to the evidence, obstructed the view, of one crossing from the north on Main street, of oncoming trains from the west. The evidence also disclosed that gates were maintained and operated by defendant during the period from 5:10 o'clock in the morning until 10:40 P.M. When the gateman was off duty, a reflector button sign, reading "Gates Not Working," was in use. This sign was installed immediately north of the tracks, on the west side of Main street. The night marshal of Leland testified that, in his opinion, five hundred motor vehicles ordinarily passed over the Main street crossing in a twenty-four-hour period, one hundred of these during the period from 10:40 o'clock P.M. until 5:10 the next morning. He also testified that he was at his residence, about a block north and a block west of the crossing, preparing his night meal, when the train passed, and that, prior to the collision, he did not hear any whistle although his hearing was good. He added that he would not say a whistle was not blown. Five witnesses testified to the careful habits, during their lifetime, of the occupants of the automobile.
The engineer, fireman and brakeman testified that the train was traveling about fifty miles an hour; that the whistle was sounded prior to reaching the crossing; that the bell was automatically ringing, and that the headlight was burning. Being seated on the right-hand side of the engine, the engineer did not see the accident. The fireman *Page 218 
testified that he was on the left side of the engine, looking ahead, and that as the train approached Main street, he saw a light from an automobile and, later, the automobile itself, the latter when the engine was about seventy feet west of the crossing; that the automobile was traveling about thirty miles an hour, and that "I do not think" it changed its speed until struck by the engine. The sign bearing the legend "Gates Not Working," located on the west side of Main street and immediately north of the tracks, according to the evidence, is about eighty-five feet from the center line of Washington street. Whether its reflector buttons would be illuminated by the headlights of an automobile, entering from Washington street and proceeding south on Main street, would depend upon the length of time required for the car to assume a position facing south where its headlights would reveal the sign. A photograph introduced in evidence by defendant tends to show complete vision of the sign, illuminated by headlights of a car from a distance of seventy-five feet north. A photographer, employed by defendant, testified that a clear view down the tracks toward the west, at the Main street crossing, is not obtained by one approaching from the north until a point is reached within five feet of the first rail to the north. A telegraph operator in the employ of defendant testified that fourteen trains traveling in an easterly direction passed Main street on November 9, 1941, and twenty-one on November 10, and that nineteen trains traveled westward November 9 and seventeen on November 10.
Initially to be determined is the propriety of the trial court's refusal to give the instructions presented by defendant, at the close of all the evidence, calling for removal from consideration by the jury of the counts charging willful and wanton misconduct. Plaintiffs maintain that the tendered instructions were too general in character, and that, in addition to including all charges of willful and wanton misconduct, they specifically enumerated and included *Page 219 
each and every charge of negligence alleged in the complaint. A careful analysis of the challenged instructions discloses that they are not vulnerable to the attack made upon them. In particular, defendant requested the court to instruct the jury "that you are not at liberty to find a verdict for the Plaintiffs, or either of them, under sub-paragraphs A, B, C, D, E, and F of Paragraph 9 of Count One of said complaint and Paragraph 7 of Count Two of said complaint," and repeated the request with respect to the appropriate portions of the third and fifth counts (charging ordinary negligence only) and counts IV and VI charging willful and wanton conduct. A like request was made with respect to the action brought by the administratrix of Taplin's estate, the relevant portion reading: "The Court instructs the jury that you are not at liberty to find a verdict for the plaintiff under sub-paragraphs A, B, C, D, E, and F of Paragraph 9 of Count One, Paragraph 7 of Count Two, * * *" Fortifying the conclusion that these instructions were specific, and not general in their nature, is the recounted circumstance that it was only after denial by the trial court of a general motion for a directed verdict, at the close of all the evidence, that defendant tendered the instructions now assailed. Accordingly, defendant having, by its tendered instructions, presented the issue whether the willful and wanton counts should be considered by the jury, the trial court's refusal to withdraw from the jury the consideration of defendant's alleged willful and wanton misconduct constitutes reversible error if there is no evidence tending to prove the allegations of these counts and where, as here, defendant preserved the point in its motion for a new trial. (Greene v. Noonan, 372 Ill. 286.) Smithers v.Henriquez, 368 Ill. 588, cited by plaintiffs, is inapplicable, for the reasons stated in Greene v. Noonan. In the Smithers case
there was no specific instruction tendered to remove the counts charging willful and wanton misconduct from the jury. *Page 220 
Merely a general motion to direct a verdict was made. Here, the willful and wanton misconduct charged is that defendant, by its servants, ran and operated its train at a high, dangerous and excessive rate of speed, and with a reckless abandon and conscious indifference to consequences, toward and upon the railroad crossing. We hold that the instructions assailed were sufficiently particular in character to present the question of whether the evidence adduced, construed most favorably to plaintiffs, tended to prove their charges of willful and wanton negligence. Although the question of willful or wanton conduct is usually an issue of fact to be decided by the jury, where the evidence, viewed in the most favorable light for the plaintiff, does not tend to show willful and wanton acts done without regard to the safety of others, a verdict should be directed in favor of the defendants. (Robertson v. New York Central Railroad Co.388 Ill. 580; Morgan v. New York Central Railroad Co. 327 Ill. 339.) It follows, necessarily, that if there is no evidence in the record to support the allegations of willful and wanton misconduct, the instructions tendered by defendant should not have been refused and, conversely, that a verdict should have been directed with respect to the charges of willful and wanton negligence. This, the trial judge could have easily accomplished by the simple process of striking from the instructions proffered by defendant the references to the parts of counts I, III and V of the first complaint and count I of the second complaint charging ordinary negligence.
Excessive speed, alone, of a railroad train through a sparsely inhabited village does not constitute a sufficient basis for the charge of willful and wanton negligence. (Robertson v. New YorkCentral Railroad Co. 388 Ill. 580; Provenzano v. Illinois CentralRailroad Co. 357 Ill. 192.) In an action against a railroad company the testimony of witnesses, as here the testimony of the night marshal of Leland, that they heard no warning signal is merely negative *Page 221 
in its character and does not tend to raise an issue of fact as to whether the warning was given. (Provenzano v. IllinoisCentral Railroad Co. 357 Ill. 192.) In short, the evidence fails to disclose the presence of any unusual circumstances of a type calculated to confuse those attempting to cross. (Robertson v.New York Central Railroad Co. 388 Ill. 580.) Construing all the evidence in its aspects most favorable to plaintiffs, together with all reasonable inferences arising therefrom, there is an obvious lack of proof, (a) of a consciousness on the part of defendant that its conduct would naturally and probably result in injury; (b) of any intentional disregard of a known duty, or (c) any absence of care for the life, person or property of others such as exhibited a conscious indifference to consequences.(Bartolucci v. Falleti, 382 Ill. 168.) There being no evidence to support the charge of willful and wanton misconduct, it was incumbent upon the trial court, upon request, to withdraw the charge from the jury. Failure to do so constituted error requiring reversal of the judgment and a retrial of the cause, owing to the uncertainty what influence the charge, though not proved, may have had upon the jury. (Greene v. Noonan, 372 Ill. 286. ) The error is not of a harmless nature, because of the presumption, where a general verdict is rendered, without specifying the count on which it is based, that the verdict is based upon a cause of action of which malice is the gist, rather than upon other counts in the same complaint charging merely ordinary negligence. Greene v. Noonan, 372 Ill. 286; Buck v.Alex, 350 Ill. 167; Jernberg v. Mix, 199 Ill. 254.
It is next urged that error was committed in refusing to give defendant's instruction No. 5. This instruction, among other things, would have informed the jury that the "defendant cannot be charged with the duty to slow down or attempt to stop its train" until its fireman knew, or by the exercise of reasonable care should have known, *Page 222 
that the driver of the automobile did not intend to stop and allow the train to pass. Defendant concedes the inapplicability of this instruction upon elimination of the willful and wanton charges from the complaint.
This opinion is not to be construed as expressing any view as to the weight of the evidence relative to the ordinary negligence charged.
Upon the authority of Greene v. Noonan, 372 Ill. 286, and for the reasons stated in this opinion, the judgments of the circuit court and of the Appellate Court are each reversed, and the cause is remanded to the circuit court of La Salle county for a new trial.
Reversed and remanded.