EILEEN I. SPRING, Individually and as Ex'r of the Estate of Glenn E. Spring, Deceased, Plaintiff-Appellant, *v.* TOLEDO, PEORIA & WESTERN RAILROAD COMPANY, Defendant-Appellee.

Third District   No. 75-198

Opinion filed November 30, 1976.—Rehearing denied December 28, 1976.

Moehle, Reardon, Smith & Day, Ltd., of Washington (Melvin O. Moehle, of counsel), for appellant.

Cassidy, Cassidy & Mueller, of Peoria (John E. Cassidy, Sr., of counsel), for appellee.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

Plaintiff appeals from an order of the circuit court of Peoria County directing a verdict for defendant and against plaintiff.

This action was brought by Eileen Spring, individually and as executor of the estate of Glenn E. Spring, to recover damages for decedent's death. The jury returned a verdict in favor of plaintiff and judgment was entered for plaintiff on September 27, 1974, in the amount of $168,464.

The defendant, Toledo, Peoria & Western Railroad Company, filed a post-trial motion for directed verdict and judgment notwithstanding the verdict. The trial court, having reserved a ruling on defendant's earlier motion for directed verdict presented at the close of the evidence, found for the defendant, overturned the jury award, and entered judgment for the defendant on February 14, 1975. Since this appeal is from a directed verdict, a comprehensive account of the facts presented to the jury is essential.

The circumstances causing decedent's death involve a collision between decedent's truck and defendant's train at a country railroad crossing. The decedent was a construction worker and on the morning of October 5, 1972, he was driving his pickup truck to the construction site for the City of Washington sanitation plant. The last segment of his route

required decedent to travel over a dirt road located on the farm of Roy Roper, commonly known as Roper Lane or Roper Road. After inclement weather had made alternative routes impassable, the owner of the private road, Mr. Roper, was paid to allow workers and supplier to use Roper Road to reach the construction site. Roper Road intersects the railroad track of defendant at a point immediately north and east of the construction site. To reach the construction site via Roper Road, it was necessary to cross the tracks and right of way of defendant from the north. In fact, this remained the only manner of access to the construction site. The crossing itself was merely dirt and gravel of sufficient height to enable a vehicle to pass over the individual rails. No lights, bells, or warnings of any kind, were located at the crossing. Brush between 6 and 12 feet high lined the north side of defendant's right of way approximately 10 to 12 feet back from the tracks. The track both east and west of the crossing is curved in such a manner that even at a moderate distance, the beams of the headlamp of a train approaching from the east do not shine directly on the track, but rather point south of the rails towards the construction site. The combination of the northward arc of the curve and the presence of high brush north of the track, limit the visibility of a train to a car approaching from the north to several hundred feet, even in the best of weather conditions. Defendant had a speed restriction of 35 miles per hour in effect for the operation of trains along the section of track where the accident occurred.

The weather conditions on the morning of the occurrence were less than ideal. It is uncontroverted that a heavy morning fog hung over the entire countryside at the time of the accident. The engineer operating the train that collided with decedent's truck estimated the visibility to be "less than 100 feet." The fireman on the train stated that the visibility was less than two railroad car lengths, which is approximately 100 feet. Another occurrence witness, Carl Call, a construction worker who arrived at the site a short time before the accident, testified that it was "real foggy." The engineer recalled that the headlights on the train were operating, but that the bell was not ringing.

The speed of the train is some matter of controversy. The engineer and fireman both testified that the speed of the train was 35 miles per hour, the same as the speed restriction then in effect. The engineer observed the speed on the speedometer in front of him whereas the fireman stated his estimate as to the speed based only on the sensation of speed and previous experience in operating similar locomotives. However, another employee of defendant, Alvin Polich, was called to testify as to the speed displayed on a speed recording device that had been in continuous operation on the morning of the accident. He testified that the device had recorded a speed of 50 miles per hour immediately prior to the train being thrown into

emergency brake. Defendant failed to introduce any evidence to show that the speed recording device was not working properly on October 5.

There is also controversy surrounding the exact type of warning whistle given by the engineer as he approached the Roper crossing. He stated he gave the signal customarily given at public crossings, which involved giving four blasts on the whistle, two long-one short-one long. Mr. Call testified he first heard the train after he had gotten out of his parked car and was standing next to it. From the type of signal given and intensity of the sound, it was his opinion that the train was "a couple miles up the track" to the east. He testified he next heard one short whistle blast and then saw the light of the train at a position 400-450 feet from Roper crossing. From his location approximately 50 feet south of the track, the glare of the train light was in his direction. Oswald Shlack, who had crossed the track in his truck moments before the Spring vehicle attempted to cross, testified that he did not hear any whistle at all. Mr. Shlack first realized the nearness of the train when he looked to his left and saw the headlamp of the approaching train. Believing that the front of his truck was close enough to the tracks to be struck by the oncoming train, he accelerated across the tracks. The decedent proceeded behind him and was struck by the train.

Mr. Shlack did not recall whether he came to a complete stop or just slowed down. The train's engineer stated that neither vehicle came to a complete stop before crossing the tracks, but estimated each vehicle's speed when approaching the crossing was 10 miles per hour. The engineer did not see either vehicle until each appeared from behind the brush that lined the side of the roadbed, some 10 feet from the closest rail.

The ultimate issue of defendant's liability was tried under a theory that defendant was guilty of wilful and wanton conduct. The wilful and wanton standard constituted the degree of care required of defendant because decedent was a trespasser on defendant's right of way. It was uncontroverted that while Mr. Roper had been contacted and paid for the use of his road, no one had ever sought permission of the railroad to travel upon its right of way. Since the decedent became a trespasser when he entered upon the land of defendant without authorization, defendant's duty to decedent was only that of a landowner to a trespasser. Hence, defendant only had to refrain in engaging in wilful and wanton conduct. The decedent had the reciprocal obligation of not engaging in contributory wilful and wanton conduct. It is a corollary of the general rule that contributory negligence is a defense to a negligence action, that contributory wilful and wanton misconduct of the plaintiff is a defense for a defendant charged with wilful and wanton conduct. (*Zank v. Chicago, Rock Island & Pacific R.R. Co.,* 17 Ill. 2d 473, 161 N.E.2d 648.) Mere contributory negligence is not a defense to a charge of wilful and wanton

conduct. (*Elgin, Joliet & Eastern Ry. Co. v. Duffy,* 191 Ill. 489, 61 N.E. 432; *Mattyasovszky v. West Towns Bus Co.,* 21 Ill. App. 3d 46, 313 N.E.2d 496, *aff'd,* 61 Ill. 2d 31, 330 N.E.2d 509.) The case went to the jury on this theory and the jury found for plaintiff. In a special interrogatory the jury also found plaintiff guilty of contributory negligence. However, it was the opinion of the trial judge that the evidence so overwhelmingly established decedent's contributory wilful and wanton conduct, that no contrary verdict could ever stand and accordingly directed a verdict in favor of the defendant. Though the trial court based its decision solely on decedent's contributory conduct, two primary issues are presented to us for review.

■■ ■ The plaintiff contends the evidence does not establish as a matter of law that decedent was guilty of contributory wilful and wanton conduct. Defendant denies this contention and also claims the evidence fails to establish, as a matter of law, that defendant was guilty of wilful and wanton conduct. To determine whether plaintiff's actions rise to the status of contributory wilful and wanton conduct as a matter of law, it must first be established what the standard is for contributory wilful and wanton conduct.

The Illinois Supreme Court has defined wilful and wanton conduct to be either an intentional injury or an act "committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care." *Schneiderman v. Interstate Transit Lines, Inc.,* 394 Ill. 569, 583, 69 N.E.2d 293; accord, *Brown v. Illinois Terminal Co.,* 319 Ill. 326, 150 N.E. 242; *Marquart v. Toledo, Peoria & Western R.R. Co.,* 30 Ill. App. 3d 431, 333 N.E.2d 558.) In attempting to elucidate the concept contained in the words wilful and wanton conduct, our Supreme Court in *Brown v. Illinois Terminal Co.,* 319 Ill. 326, 150 N.E. 242, commented as follows:

> "Such conduct [wilful and wanton] imports consciousness that an injury may probably result from the act done and a reckless disregard of the consequences. Ill-will is not a necessary element to establish the charge." 319 Ill. 326, 331, 150 N.E. 242, 244.

Hence, wilful and wanton conduct lies somewhere in the twilight between negligence and intentional tort. Culpability under a theory of wilful and wanton conduct, as distinguished from negligence or intentional tort, is essentially a matter of degree. But what varies between each of these three categories of tort is not the quality of the physical act, rather, it is the state of mind of the individual accused of engaging in the prohibited conduct. *Bartolucci v. Falleti,* 382 Ill. 168, 46 N.E.2d 980, is enlightening in this regard:

"An intentional disregard of the known duty necessary to the safety of the person or property of another, and an entire absence of care for the life, person or property of others, such as exhibits a conscious indifference to consequences, makes a case of constructive or legal wilfulness." 382 Ill. 168, 174, 46 N.E.2d 980, 983.)

While the task of accurately defining the concept of wilful and wanton conduct is difficult, it is harder still to apply to a specific factual setting. An examination of previous cases in this area provide some guidance in the application of the term.

*Zank v. Chicago, Rock Island & Pacific R.R. Co.*, 17 Ill. 2d 473, 478, 161 N.E.2d 848, establishes one of the parameters as to what is wilful and wanton conduct. Events conclusively established that a motorist increased her speed "to beat the train across the tracks." The court held that as a matter of law the motorist was guilty of wilful and wanton conduct.

In *Walsh v. Gazin*, 316 Ill. App. 311, 45 N.E.2d 95, the plaintiff was crossing a street near an intersection. The plaintiff testified that before crossing the street, he looked to see if any traffic was approaching but failed to see defendant's car. It later appeared that at that instant the view of defendant's car was obstructed by standing streetcars. Moments later, plaintiff looked again in defendant's direction and now observed defendant's car rapidly approaching from a distance of about 40 to 50 feet away. Plaintiff was in the path of defendant's oncoming vehicle and tried to get out of the way but failed. Plaintiff was struck just before he reached the curb. In *Walsh* the jury affirmatively answered a special interrogatory which, in essence, asked if the plaintiff was guilty of contributory wilful and wanton conduct and judgment was entered for defendant. The appellate court held that the submission of the interrogatory was reversible error, finding plaintiff's conduct in walking across the street was at best contributory negligence.

In *Glaze v. Owens*, 104 Ill. App. 2d 172, 243 N.E.2d 13, the defendant's truck struck the rear of plaintiff's car, which was stopped for a school bus. The court found defendant's failure to observe the stopped school bus and plaintiff's car in sufficient time to stop his vehicle, when defendant could have had he been properly attentive, was not evidence sufficient to warrant submission of the question of defendant's wilful and wanton conduct to the jury.

From these two cases it would appear that merely being inattentive to observable facts does not raise the status of one's conduct to the category of wilful and wanton conduct. While not presented with the problem of delineating what is wilful and wanton conduct and what is negligence, other cases hold that the failure of a plaintiff to perceive readily

observable facts while crossing railroad tracks constitutes contributory negligence. (*Krotke v. Chicago, Rock Island & Pacific R.R. Co.*, 26 Ill. App. 3d 493, 327 N.E.2d 212; *Harsha v. Peoria & Eastern R.R. Co.*, 131 Ill. App. 2d 920, 269 N.E.2d 733.) While *Krotke* and *Harsh* deal with situations in which the crossing motorist had an unobstructed view of the tracks in the direction of the oncoming train, decedent in the instant case was faced with a number of visual obstructions and distractions.

■■ Illinois courts have generally held the due care of a decedent to be a factual matter whenever the decedent's view was obstructed or when he was exposed to confusing or misleading circumstances. In *Dukeman v. Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.*, 237 Ill. 104, 86 N.E. 712, a coal shed and a peach grove served as sufficient obstructions to warrant submitting the issue of plaintiff's contributory negligence to the jury. Whenever significant obstructions and distractions exist which effect the injured party's ability to see warnings signaling the approach of a train, the determination of due care is better left to the jury. *Gills v. New York, Chicago & St. Louis R.R. Co.*, 342 Ill. 455, 174 N.E. 523; *Gibbons v. Aurora, Elgin & Chicago R.R. Co.*, 263 Ill. 266, 104 N.E. 1066; *Smith v. Illinois Central R.R. Co.*, 343 Ill. App. 593, 99 N.E.2d 717.

Two Seventh Circuit cases have recognized the factual nature of the duty of due care for one's own safety. In *Longhinni v. Gulf, Mobile & Ohio Ry.* (7th Cir. 1968), 348 F. 2d 228, a motorist's view of the approaching train was restricted by a cornfield. In applying Illinois law the court of appeals expressly ruled:

> "Where the evidence discloses that a railroad crossing is obstructed to any considerable extent, both the issues of negligence and contributory negligence are questions of fact for the jury." (348 F.2d 228, 230.)

In an earlier case, the same court held that the presence of fog, darkness, weeds 2 to 5 feet high on the train embankment and around the crossing area, were sufficient facts to take the issue of decedent's due care to the jury, even though certain warning devices were present at the crossing. *Bell v. Pennsylvania Ry.* (7th Cir. 1960), 284 F.2d 297.

A relatively recent Illinois case has limited, in certain situations, the scope of the well established rule on visual obstructions at railroad crossings. (*Overman v. Illinois Central R.R. Co.*, 34 Ill. App. 2d 30, 180 N.E.2d 213.) While recognizing the validity of the rule when the obstruction and crossing were unfamiliar, *Overman* held that if a motorist's "view of a crossing is obscured, and the location of the crossing is known to the traveler, it is the traveler's duty to approach the crossing with the amount of care commensurate with the situation as it exists,—his duty is enhanced rather than excused by such circumstances. The claim that care and caution by any person has been exercised cannot be

sustained when the known facts disclose that ordinary care would have avoided the accident." (34 Ill. App. 2d 30, 42, 180 N.E.2d 213, 218-19.) It should be noted that certain significant factual dissimilarities exist between *Overman* and the instant case and, more importantly, the court was faced only with the question of contributory negligence, not contributory wilful and wanton conduct.

Both parties agree that the standard for determining whether a directed verdict or a judgment *n.o.v.* should be given is established in *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 229 N.E.2d 504. This oft-cited case requires a directed verdict or judgment *n.o.v.* to be entered "only in those cases in which all of the evidence, when viewed in its aspects most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) After applying the *Pedrick* standard, and "[c]onsidering all the evidence, with all reasonable inferences and intentments therefrom, in its aspects most favorable to the plaintiff" (*Overman v. Illinois Central R.R. Co.*, 34 Ill. App. 2d 30, 43, 180 N.E.2d 213, 219), we are unable to say, as a matter of law, that plaintiff was guilty of contributory wilful and wanton conduct.

Competent evidence was presented that only one short blast of a warning whistle was given, a whistle that was not heard by Mr. Shlack, driver of the vehicle which proceeded across the tracks immediately before the decedent. The train engineer testified that he did not see either vehicle until they emerged from behind the weeds, a distance of 10 feet from the tracks. Hence, it is reasonable to assume that the train could not be seen by either driver especially since their vantage point was well below the uppermost part of each vehicle. The combination of the twilight of the dawn, the curve of the track, and a dense fog, significantly decreased the effectiveness of the train's headlamp as a device to warn decedent of the train's approach. Defendant's own employee testified that visibility was about 100 feet, a distance a jury could infer to be an upper limit. A simple calculation shows that with the 50-mile-per-hour speed shown on the recording device, and with 100-foot visibility, the train would emerge out of the fog just over one second before reaching the point of collision. In that same time period at a speed of 10 miles per hour, the front of decedent's vehicle would travel from the edge of the weeds across the tracks, to a point just beyond the farthest rail, placing decedent directly in the path of the oncoming train.

The foregoing does not necessarily demonstrate the existence of decedent's due care as a matter of law, but it does present a strong factual foundation on the issue of decedent's due care. It is true that other evidence supports the finding of the lack of due care of the decedent. Yet, in light of the facts with all reasonable inferences and intentments in favor

of plaintiff, we fail to perceive how the decedent's conduct exhibits such a "reckless disregard" or "conscious indifference" for his own safety that a court must hold as a matter of law that decedent was guilty of contributory wilful and wanton conduct. Such conduct may as a matter of law constitute contributory negligence and, as stated earlier, in a special interrogatory the jury did in fact find the decedent had been contributorily negligent. However, a plaintiff's contributory negligence is not a defense to a defendant's wilful and wanton conduct. (*Mattyasovszky v. West Towns Bus Co.*, 21 Ill. App. 3d 46, 313 N.E.2d 496, *aff'd*, 61 Ill. 2d 31, 330 N.E.2d 509.) We decide today only that the issue of decedent's due care for his own safety was best left to the discretion of the jury, not that the degree of care required existed as a matter of law. It is not our position to question the wisdom of a jury's verdict unless the defendant is entitled to a directed verdict or judgment *n.o.v.* under the *Pedrick* standard. Ample evidence was presented to justify the submission of the issue to the jury and the trial court erred when it found that the plaintiff's decedent had been guilty of contributory wilful and wanton conduct as a matter of law.

Defendant claims that the evidence also fails as a matter of law to establish that it was guilty of wilful and wanton conduct in the operation of its train. While we entertain serious doubts as to whether the issue is properly before us, we will nonetheless dispose of it. Everything that was previously said concerning the standard of contributory wilful and wanton conduct applies equally here.

Defendant cites a number of cases to support his contention. He first claims that speed alone of a railroad train, "through a sparsely inhabited village does not constitute a sufficient basis for the charge of willful and wanton negligence" (*Trumbo v. Chicago Burlington & Quincy R.R. Co.*, 389 Ill. 213, 220, 59 N.E.2d 92, 95), and the absence of the blowing of a whistle "would not, of itself, constitute evidence of willful and wanton misconduct under the facts of this case" (*Robertson v. New York Central R.R. Co.*, 388 Ill. 580, 584, 52 N.E.2d 527, 529). We agree with the decision and rules of law announced in defendant's cases but find important factual dissimilarities between each of them and the present case. The case of *Neice v. Chicago & Alton R.R. Co.*, 254 Ill. 595, 98 N.E. 989, is somewhat more analogous to the present case. In *Neice* the plaintiff's decedent was considered a trespasser and the case was tried on a charge of defendant's wilful and wanton operation of its train. In reaching its decision our Supreme Court said:

> "To run a train in the night time over unlighted station grounds without a headlight, and without any warning by bell or whistle, along a platform where persons may reasonably be expected to be, is evidence tending to prove a wanton and reckless disregard of the

safety of such persons. In such a case it is not necessary that there should be specific knowledge of an individual on the track or platform or specific ill-will toward or an intention to injure an individual." (254 Ill. 595, 604, 98 N.E. 989, 992.)

The court held that the issue of defendant's wilful and wanton conduct was a jury question under the facts presented.

While the present case does contain evidence of excessive speed or inadequacy of a warning whistle found in *Trumbo* and *Robertson,* there are other contributing factors present. Defendant fails to realize that it is the combined effect of all factors which must be considered when determining whether sufficient evidence was presented to justify submitting to the jury the issue of defendant's wilful and wanton conduct. As we have said, the crucial distinction between ordinary negligence and wilful and wanton conduct is the state of mind of the actor. Certain facts exist which are relevant in determining the engineer's state of mind when approaching the crossing on the morning of October 5. The engineer knew of the existence and location of the crossing. He was also aware of construction activity in the immediate vicinity of the crossing. He knew of the 35-mile-per-hour speed restriction in the area, applicable in the best of weather conditions. He knew that workmen were using the crossing to go to and from work. He knew the time of day was 7:30. As a long time laborer, he was surely aware that at such time workmen would be proceeding to work or that construction activity was already in progress, either of which could place vehicles on the crossing. His own estimate of visibility in the dense fog was 100 feet. Nevertheless, he proceeded at a speed of 50 miles per hour, as demonstrated by the speed recording device, through the dense fog towards the crossing. An impartial witness heard only one blast of the train's whistle while another heard none.

■■ We believe that the engineer's awareness of the relevant facts and conditions existing on the morning of October 5, when coupled with all other evidence in favor of plaintiff, sufficiently demonstrated a "reckless disregard" or "conscious indifference" for the safety of others such as to justify the submission of the issue of defendant's wilful and wanton conduct to the jury. Since no errors are urged as concerns the trial itself, it is unnecessary to remand the case for a new trial. Accordingly, the judgment of the circuit court of Peoria County is reversed with directions to enter judgment for plaintiff in accordance with the jury's verdict.

Reversed and remanded with directions.

STENGEL and BARRY, JJ., concur.