(No. 49245.—

EILEEN I. SPRING, Indiv. and as Ex'r, Appellee, v. TOLEDO, PEORIA & WESTERN RAILROAD COMPANY *et al.*—(Toledo, Peoria & Western Railroad Company, Appellant.)

*Opinion filed Nov. 30, 1977.—Rehearing denied Jan. 26, 1978.*

Cassidy, Cassidy & Mueller, of Peoria (John E. Cassidy, Sr., of counsel), for appellant.

Moehle, Reardon, Smith & Day, of Washington (Melvin O. Moehle, of counsel), for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

A jury in the circuit court of Peoria County returned a general verdict finding the defendant Toledo, Peoria & Western Railroad Company liable for wilful and wanton conduct in connection with the alleged wrongful death of plaintiff's husband, Glenn E. Spring, who was struck by a train while trespassing across the railroad's right-of-way. The jury also returned a special verdict finding the decedent to have been contributorially negligent. On the railroad's post-trial motion, the circuit court set aside the jury's general verdict for plaintiff, substituted a directed verdict for the railroad, and entered judgment *n.o.v.* for the railroad on the ground "that the evidence when viewed in its aspect most favorable to plaintiff so overwhelmingly establishes that decedent was guilty of contributory wilful and wanton conduct that no contrary verdict based on that evidence could ever stand." The court simultaneously denied the railroad's motion for a new trial "[i]n view of the judgment entered herein in favor of defendant."

The Appellate Court, Third District, affirmed the

circuit court's denial of a new trial, but reversed the judgment and remanded the cause with instructions to enter judgment for plaintiff in accordance with the jury's general verdict. (44 Ill. App. 3d 3.) We affirm.

The decedent worked on a construction project located immediately southeast of Roy Roper's farm. A public highway runs adjacent to the north edge of the farm, and the railroad's right-of-way runs roughly east and west across the southern portion of the farm. To reach the construction site, it apparently was necessary to leave the public highway and travel south on Roper Lane, a dirt and gravel road which runs roughly north and south across Roper's farm, eventually crossing the railroad's right-of-way.

The contractor paid Roper for the privilege of crossing his land, but there is no evidence that the railroad had authorized the crossing of its right-of-way. There is, however, some evidence that the railroad was aware of the use being made of this crossing; at least the engineer of the train in question was aware of it. The crossing has no warning devices or signals, and high weeds grow to within about 10 feet of the north side of the tracks. The tracks curve slightly northward to the east of the crossing. Hence, the weeds tend to obscure even more of the tracks on the east side of the crossing from a driver approaching the crossing from the north.

On October 15, 1972, at about 7:30 a.m., a heavy fog hung in the air as decedent followed Oswald Schlack down Roper Lane toward the crossing, while one of the railroad's trains proceeded westward toward the crossing. A recording device located on the train indicated that it was traveling at 50 miles per hour as it reached the crossing, far in excess of 35 miles per hour—the maximum speed authorized by the railroad. The train's headlight apparently was operating, but there is some dispute as to when and where the train's warning whistle sounded. The

warning bell apparently was not ringing.

As he reached the crossing, Schlack stopped, then looked up and saw the train coming and crossed the tracks. He looked back after crossing the tracks in time to see the train hit decedent's truck. Other witnesses testified that the decedent also decelerated before crossing the tracks. Before he died, decedent allegedly told another witness that he hadn't seen the train. The trial court interpreted this testimony, as well as the conflicting testimony regarding the position of the train when its whistle sounded, to indicate that decedent had not even looked to see if a train was coming, and therefore had been guilty of contributory wilful and wanton conduct.

We disagree. Given the limited visibility and the conflicting testimony regarding the position of the train, the jury could have found that decedent's failure to see the train was not due to a contributory wilful and wanton failure to look. Thus, under the decision in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, it was error to direct a verdict and enter judgment *n.o.v.* for the railroad on this issue.

The railroad raises several other objections to the jury's general verdict. First, it contends that it could not, as a matter of law, be found to have engaged in wilful and wanton conduct based on the record before us. We disagree. This court has variously defined wilful and wanton conduct as that "committed under circumstances exhibiting a reckless disregard for the safety of others" (*Schneiderman v. Interstate Transit Lines, Inc.* (1946), 394 Ill. 569, 583), "conduct [which] tended to show such a gross want of care and regard for the rights of others as to justify the presumption of wilfulness" (*Lake Shore & Michigan Southern Ry. Co. v. Bodemer* (1892), 139 Ill. 596, 607), "[c]onduct [which] imports consciousness that an injury may probably result from the act done and a reckless disregard of the consequences" (*Brown v. Illinois*

*Terminal Co.* (1925), 319 Ill. 326, 331), and conduct "[w]here the act was done with actual intention or with a conscious disregard or indifference for the consequences when the known safety of other persons was involved" and "[t]he knowledge concerning other persons [was] actual or constructive" (*Myers v. Krajefska* (1956), 8 Ill. 2d 322, 328-29). We need not resolve all of the fine distinctions among these definitions with yet another restatement of the wilful and wanton standard. The outcome of this case is the same regardless of which of the above variations we apply.

Defendant points out that, under the decision in *Trumbo v. Chicago, Burlington & Quincy R.R. Co.* (1945), 389 Ill. 213, 220, "[e]xcessive speed, alone, of a railroad train through a sparsely inhabited village does not constitute a sufficient basis for the charge of willful and wanton negligence." See also *Robertson v. New York Central R.R. Co.* (1944), 388 Ill. 580, 584; *Provenzano v. Illinois Central R.R. Co.* (1934), 357 Ill. 192.

The instant case does not, of course, involve speed alone. Rather, it involves evidence from which the jury could have found (1) excessive speed, (2) limited visibility, (3) the engineer's awareness of the likelihood of the presence of trucks crossing the tracks at the time and place of the accident, and (4) unreasonable delay in sounding the train's whistle. It therefore was not impermissible for the jury to conclude that the engineer had recklessly disregarded the probability of serious injury to persons crossing the tracks on the morning of the fatal accident.

The railroad invites us to abolish the distinctions among the duties owed trespassers, licensees, and invitees by owners and occupiers of land. The railroad suggests that trespassers then would not need to prove wilful and wanton negligence to recover damages, but rather would only need to prove ordinary negligence, to which the deceased's contributory negligence presumably would be a

defense. The abolition of those distinctions would not alter the outcome of this case, however. Even if the distinctions were abolished, plaintiff would be entitled to plead and prove (as he did) wilful and wanton negligence on the part of the railroad, to which plaintiff's own mere contributory negligence is no defense. (*Little v. Blue Goose Motor Coach Co.* (1931), 346 Ill. 266, 272; accord, *Mattyasovszky v. West Towns Bus Co.* (1974), 21 Ill. App. 3d 46, 50, 55 (Moran, J.), *aff'd on other grounds* (1975), 61 Ill. 2d 31. See also Prosser, Torts sec. 34, at 184-85, and sec. 65, at 426 (4th ed. 1971); *cf. Zank v. Chicago, Rock Island & Pacific R.R. Co.* (1959), 17 Ill. 2d 473, 476.) Thus, the distinction between wilful and wanton negligence, far from being a "fantasy," as suggested by the railroad, is one recognized in all jurisdictions (see Prosser at 426), which has received additional content from its application to particular facts and circumstances in cases spanning much of the history of this court. See, *e.g., Illinois Central R.R. Co. v. Godfrey* (1874), 71 Ill. 500, 508; *Lake Shore & Michigan Southern Ry. Co. v. Bodemer* (1892), 139 Ill. 596, 607; *Brown v. Illinois Terminal Co.* (1925), 319 Ill. 326, 331; *Bartolucci v. Falleti* (1943), 382 Ill. 168, 174; *Klatt v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 481, 488.

The railroad also would have us construe the jury's finding of contributory negligence to be a finding of contributory wilful and wanton conduct. The railroad cites no relevant authority in support of this novel proposition, and we find it to be without merit.

Finally, the railroad argues that it was error for the circuit court to fail to condition its denial of a new trial upon the outcome of further proceedings, pursuant to section 68.1(6) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 68.1(6)). While there is a serious question as to whether the railroad has properly preserved this issue, we need not even address that question.

For the foregoing reasons the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE DOOLEY, specially concurring:

I agree with the judgment of the court.

But this case presents a compelling argument why we should abolish the archaic distinction between trespasser, licensee and invitee. The duty should be that of reasonable care under the circumstances, with foreseeability the measure of liability. See my dissent in *Washington v. Atlantic Richfield Co.* (1976), 66 Ill. 2d 103, 110.

MR. JUSTICE UNDERWOOD, dissenting:

In my opinion the trial judge correctly granted defendant's motion for judgment *non obstante veredicto* and that judgment should be affirmed.

I am not at all certain that the railroad was guilty of wilful and wanton misconduct. (*Trumbo v. Chicago, Burlington & Quincy R.R. Co.* (1945), 389 Ill. 213; *Robertson v. New York Central R.R. Co.* (1945), 388 Ill. 580; *Overman v. Illinois Central R.R. Co.* (1962), 34 Ill. App. 2d 30.) But even if it were, the decedent's reckless disregard for his own safety certainly reached the level of contributory wilful and wanton conduct precluding recovery.

The majority opinion emphasizes what it considers to be the dangerous nature of the crossing: no warning devices or signals and high weeds growing to within perhaps 10 feet of the tracks. It ignores the fact that this temporary crossing had been created without the railroad's consent, and that those who used it were simply tres-

passers for whose use the railroad was under no obligation to improve the crossing or right-of-way.

Oswald Schlack, the driver of the truck which decedent was following, testified he stopped close to the track, looked and saw the train coming and continued on across the track. He did not know the distance at which the train was when he first saw it other than it was "very close." Other witnesses gave varying estimates of the distances at which the train light was visible, and Carl Call, a co-worker with decedent and an eyewitness to the accident, testified he first heard the train whistle and saw its light when it was some 400 to 450 feet from the crossing. On this record there can be no doubt of the train's visibility and that, had decedent looked before proceeding across the tracks, he would have seen it.

The trial judge gave as his principal reason for granting defendant's motion for judgment *n.o.v.* the fact that the only explanation of decedent's failure to see the train was that he didn't look, and that conclusion seems to me inescapable. Given decedent's familiarity with the dirt and gravel crossing, the foggy morning and the brush or weeds interfering with his view as he approached the tracks, the gravity of his disregard for his own safety at least equals that of defendant.

This court's recent decision in *Coleman v. Illinois Central R.R. Co.* (1974), 59 Ill. 2d 13, 17, emphasized what the majority opinion now overlooks. The court there said: "In prior decisions this court has consistently recognized the rule of law that railroad crossings are dangerous places and that in crossing them a person must exercise a degree of care commensurate with the danger to be anticipated. [Citations.]"

Unless the majority is preparing to abandon the concept that the individual has some responsibility for his own safety, it seems to me that decedent's reckless

disregard for his own welfare constituted wilful and wanton misconduct precluding recovery.

I would reverse the appellate court judgment and affirm the judgment of the circuit court of Peoria County.

MR. JUSTICE RYAN joins in this dissent.